George Yuhas, Petitioner *v.* Workmen's Compensation Appeal Board (City of Pittsburgh), Respondents.

Argued March 14, 1984, before Judges ROGERS, COLINS and BARBIERI, sitting as a panel of three.

*Thomas P. Geer,* for petitioner.

*Charles P. Falk,* with him, *Joan P. Feldman, Baskin and Sears, P.C.,* for respondent.

OPINION BY JUDGE ROGERS, May 15, 1984:

This is the appeal of a claimant from an order of the Workmen's Compensation Appeal Board denying him compensation for disability after a heart attack. The claimant contended and at the referee's hearing adduced lay and medical evidence tending to show that his heart attack, a myocardial infarction, was suffered in the course of, and was related to, his employment.

His employer, the City of Pittsburgh, produced no evidence. The referee in deciding against the claimant found only that "the claimant did not sustain any injury which arose in the course of, and was related to, his employment" and that "whatever disability the claimant may have is not related to his employment." The claimant appealed and the appeal board, characterizing the referee's findings as conclusions, remanded for findings of fact and a new decision. The referee thereupon made numerous findings based on his examination of hospital records which had been routinely admitted into evidence. His conclusions were to the effect that the claimant's heart attack and disability were not suffered in the course of, or related to, his employment.

Familiar principles of administrative law governing judicial review of administrative agencies' treatment of the facts are: that if the agency has decided the case in favor of the party with the burden of proof, review of the record evidence is to determine whether the agency's findings of fact are supported by substantial evidence; but that if the agency has decided the case against the party with the burden, the question on review is that of whether the agency's findings of fact can be sustained without a capricious disregard of competent evidence.

Substantial evidence is more than a scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Pennsylvania State Board of Medical Education and Licensure v. Schireson,* 360 Pa. 129, 61 A.2d 343 (1948). Capricious disregard is the willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to the truth. *Pusey's Estate,* 321 Pa. 248, 184 A. 844 (1936).

Also familiar is the rule that the administrative agency is the sole judge of the credibility of witnesses, of what evidence shall be accepted as fact, of what weight should be given to items of evidence and of the inferences to be drawn from the evidence. *Hamilton Unemployment Compensation Case,* 181 Pa. Superior Ct. 113, 124 A.2d 681 (1956).

A product of these rules is that in most cases in which agencies decide in favor of the party with the burden of proof reviewing courts uphold the agencies' findings of fact as supported by substantial evidence; this is because the existence in a record of more than a scintilla of evidence is usually not difficult to discern. Another product of the rules is that where agencies decide cases against the party having the burden of proof, reviewing courts rarely conclude that there has been a capricious disregard of competent evidence; and the reason is that the presence in a record of testimony of an apparently trustworthy witness whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to its truth, is rarely encountered and this is because crucial testimony adduced by the party with the burden is almost always challenged. *Lowery v. Pittsburgh Coal Co.,* 427 Pa. 576, 235 A.2d 805 (1967), however, is a case in which capricious disregard of testimony was discerned and being quite similar on the facts has persuaded us that the same has happened in this case.

In *Lowery,* the claimant filed a claim under the Occupational Disease Act, asserting disability from silicosis. He died during the proceedings. Physicians testified that the claimant's disability and death were caused by silicosis. The employer offered no medical evidence of any kind. The referee refused to find that the claimant had become totally disabled by silicosis within four years from the date of his last employ-

ment. The appeal board affirmed the referee's action, finding the testimony of the claimant's witnesses to be "competent but not credible." The Superior Court affirmed the action of the appeal board. The Supreme Court vacated the Superior Court's order, finding "grave reason" for limiting the rules that the compensation authorities have wide latitude in finding the facts and that they are not required to accept even uncontradicted testimony of the witness; that those rules, and by implication the capricious disregard standard, must be qualified by the compensation authorities' obligation to deal rationally and coherently with the evidence before them; and that for the court to acquiesce in the disposition of a matter in which the agency has furnished an insufficient basis for review is an abdication of judicial responsibility. The Supreme Court remanded the record to the appeal board so that it might explain its reasons for rejecting the claim.

The evidence in this case briefly summarized was as follows:

The claimant testified that he was an accountant; that after some years in practice with private enterprises, he took a position with the City of Pittsburgh's Senior Citizens Program, a division of the Department of Parks and Recreation in 1975; that the work was stressful because the program was starting up and more especially because the supervisor was excitable and highly and volubly censorious of the work of other subordinates; that the month of June, 1976 had been a particularly stressful time for the claimant because he was responsible, against a deadline, for the preparation of a number of drafts and revisions of drafts of the budget; that at the end of the work day on Friday, June 25, 1976, he went home exhausted and lay down to rest; that the supervisor, in a febrile state, called and talked to him for forty-five minutes

concerning employees of the office whose work was unsatisfactory to her and of her intention, despite the claimant's need of secretarial help, to transfer the only typist in the office; that after the supervisor's talk had gone on unabated for some time he experienced chills, tightness and finally pains in his chest; that he hung up the telephone and asked the man who shared the apartment to call the paramedics; that he was taken to the hospital where he remained in intensive care for eleven days and in ordinary care until July 17, 1976; that during the previous April he had trouble eating and sleeping because of the "strain and pressure of the job" and that in May he was hospitalized for chest pains but discharged with the report that everything was all right with his heart.

Jesse Stretch, with whom the claimant shared an apartment, testified that he was present during the telephone call of the supervisor to the claimant; that it indeed lasted forty-five minutes; that it consisted of strident and continuous talk from the other end of the line; and that he witnessed the claimant's heart seizure and called the paramedics.

Bea Welch, a former fellow employee with the Senior Citizens Program, testified that the claimant was a sincere, conscientious, quiet and sensitive person; that the director of the Senior Citizens Program engaged in screaming sessions, with her subordinates with doors slamming and weeping; that the claimant acted as a consolant to the objects of the supervisor's displeasure; and that these flareups happened twice a week.

William Scalzo, the City's Superintendent of Recreation and the superior of all of the people in the Senior Citizens Program testified that he was aware of the lack of rapport of the director of the program with her staff and with the claimant's concern over this. He testified that the claimant was a fine em-

ployee, that he did his job well and asked for additional responsibilities.

Ceasar A. Garofoli, M.D. testified that he is board certified in family medicine with principal training in internal medicine; that he treats an average of sixty new heart attacks each year; that the claimant first consulted him in March, 1976 complaining of anxiety, nervousness and chest pains related to tension; that on May 7, 1976, although still complaining of chest pains, the claimant seemed to be improved; that the chest pains persisted and the claimant was hospitalized on May 16, 1976; that his EKG's were within normal limits and it was thought that his pain might be of neuralgic origin; that the claimant was seen by a specialist in physical medicine who thought that the claimant might be relieved by heat applications and treatment of the emotional aspects of his anxiety over his work; that the claimant was treated by others during his admission to the hospital on June 25 until July 17, 1976 but that he, Doctor Garofoli, followed his condition in the hospital and treated him after discharge; that it was determined that the claimant suffered from arteriosclerotic heart disease and coronary occlusions and that he had a myocardial infarction on June 25, 1976; that he, the witness, had reviewed the hospital records of both the May and June-July hospitalizations and the claimant's testimony concerning his work history and of the events immediately preceding the myocardial infarction on June 25, 1976, and that he "would have to state with reasonable medical certainty that the strain of his work, the pre-existing heart disease, the telephone call prior to this were probably the three things that contributed to . . . [the] heart attack" and "I am not being equivocal . . . from my own medical opinion . . . these three factors would be the ones that would be inherent in his having a heart attack."

As we have earlier noted, the employer adduced no evidence. As we have also noted, the referee's first decision contained findings and conclusions only that the claimant did not sustain an injury which arose in the course of his employment or which was related thereto. The board remanded this decision as inadequate. The second decision contains copious findings among which are the three following which are instructive on the point of whether there was a capricious disregard of the record evidence:

16. The said hospital records referred to in paragraph 10 hereof has [sic] a history of the present illness wherein it indicates that claimant's chest pain occured [sic] after he walked home from work and climbed up a flight of steps to his apartment. There was no mention in said records or any other records that said chest pains began while claimant was lying in bed at home and talking with a person over the telephone, as claimant alleged in his testimony.

17. Although claimant alleged in his testimony that he was lying in bed at home after work on June 15, 1976, and was talking to another employee of employer over the telephone when he first began to have chest pains, he apparently did not give such a history to his medical witness since said witness testified that he did not know of such telephone conversation and became aware of it only by reading the transcript of claimant's testimony at a hearing in this matter.

18. Assuming, arguendo, that such a telephone conversation occurred, such telephone conversation was totally unexpected by claimant and did not relate to claimant's work duties or assignment; he was not required to receive such a call or to listen to such a caller; nor was

he actually engaged in the furtherance of employer's business while listening to or participating in such a conversation or when he received the call.

The hospital record referred to in paragraph 16 is a handwritten contemporaneous summary of the claimant's admission to the hospital on June 25, 1976 over the signature of "Gwen." After recording that the claimant was brought to the emergency room with crushing pain across his chest, the writer notes "[t]he above occurred after walking home from work and climbing up flight of steps to his apartment," and then passes to a description of the claimant's symptoms. We find nothing remarkable in the fact that the telephone incident does not appear in this history taken at the time of claimant's admission to the hospital. In Finding 17, the referee curiously refers to the telephone call as "talking with another employee" instead of, what it was, a call from the claimant's superior. Also, Dr. Garofoli's testimony is somewhat misstated by the referee. The doctor testified that he read the transcript of the claimant's testimony and thereby learned both of his experiences of stress at work and of the telephone incident. Nor is Finding 18 accurate. To say that the call did not relate to the claimant's work duties, that he was not required to receive or listen to the call and that the claimant was not acting in furtherance of his employer's business while listening to his superior is a clear mischaracterization of this incident.

We also learn from the record that at the time the hearings were being conducted by the referee, the supervisor, who the evidence made a central figure in the case was still employed by the city. She was not produced in opposition to the claim. The testimony of the claimant, of Jesse Stretch who witnessed the telephone call, of Ms. Welch who described the super-

visor's conduct at the work place, of the head of the City Department of Recreation, who admitted knowledge of the lack of harmony in the office, and of the claimant's physician that the work caused the injury was unrebutted and for the most part disinterested. We conclude that the board erred in holding that the referee had not capriciously disregarded substantial, relevant and unrebutted evidence supporting the claimant's claim petition on the merits. Pertinent authorities in addition to *Lowry* supporting our conclusion are: *Krawchuck v. Philadelphia Electric Co.*, 497 Pa. 115, 439 A.2d 627 (1981) (establishing that the place where a heart attack occurs is merely a factor for the referee to consider in deciding whether the attack arose in the course of employment); *Beth-Allen Ladder Co. v. Workmen's Compensation Appeal Board*, 53 Pa. Commonwealth Ct. 323, 417 A.2d 854 (1980); *A. P. Green Refractories Co. v. Workmen's Compensation Appeal Board*, 44 Pa. Commonwealth Ct. 1, 403 A.2d 172 (1979); *Workmen's Compensation Appeal Board v. Winkleman*, 19 Pa. Commonwealth Ct. 33, 339 A.2d 647 (1975).

The case has another issue. The claimant alleged in his claim petition that notice[1] of the injury was given to the employer by telephone call to William Scalzo, Assistant Director of Parks and Recreation of the City of Pittsburgh, on June 25, 1976. The defendant answered that it was without sufficient knowledge to form a belief as to the truth of this averment and demanded proof at trial.

Unfortunately, the claimant's counsel failed to prove that notice was given. The referee in his first decision made no reference to notice and the employer did not cross appeal from the referee's decision. In-

---

[1] As required by Section 311 of The Pennsylvania Workmen's Compensation Act, Act of June 21, 1915, P.L. 736, *as amended*, 77 P.S. §631.

deed, in the claimant's brief we are told that the employer never in these proceedings raised a question concerning notice of injury and reasonably argues that it is highly unlikely that the claimant's superiors did not know that their accountant had suffered a serious and sudden illness. Nevertheless, the referee in his second decision, made more than two years after the first, found that the claimant had not given notice and that his claim was barred for this reason.

The claimant cites *Hilton Hotel v. Workmen's Compensation Appeal Board (Halaski),* 70 Pa. Commonwealth Ct. 610, 453 A.2d 735 (1982), as authority for the proposition that the employer is foreclosed because it did not raise the question of lack of notice when these proceedings began. But this is not what we held in *Hilton Hotel;* rather we held that, the Supreme Court having earlier declared that the claimant in that case was entitled to an award, we were precluded from investigating and deciding the question of whether indeed the claimant was ineligible because he failed to give notice of his injury. Here there was no judicial pronouncement of the entitlement of the claimant to an award before the referee's second decision at which the referee for the first time raised the notice question.

Nor do we believe that the employer is barred because it did not appeal from the referee's first decision. The board never finally acted on that decision; it remanded it and later affirmed the referee's second decision. There was, therefore, no final order by which the employer could be barred by collateral estoppel until the board's action affirming the referee's second decision.

However, we hasten to hold that it would be most unjust to dismiss this meritorious cause because the claimant failed to prove the fact of notice, the absence of which was never made an issue of by the employer

or the referee until the second referee's decision made more than three years after these proceedings began. We believe that the proper course is to remand this aspect of the case for a further hearing at which the claimant may have an opportunity to prove notice.

We reverse the board's order insofar as it affirms the referee's order refusing an award of benefits on the ground that the claimant had failed to prove his entitlement to an award on the merits; we remand the record to the board for evidentiary hearing at which the claimant may have the opportunity to prove that he gave the notice required by Section 311, and if it is found that such notice was given, for an award of benefits according to law. Jurisdiction is relinquished.

### ORDER

AND NOW, this 15th day of May, 1984, the Workmen's Compensation Appeal Board's order insofar as it affirms the referee's order refusing an award of benefits on the ground that the claimant failed to prove his entitlement to an award on the merits, is reversed; the record is remanded to the board for an evidentiary hearing at which the claimant may have the opportunity to prove that he gave the notice required by Section 311 of The Pennsylvania Workmen's Compensation Act, and if it is found that notice was given, for an award to the claimant of benefits according to law. Jurisdiction is relinquished.