563 A.2d 228

**METRO TRANSPORTATION COMPANY, t/a Yellow Cab Company, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 7, 1989.

Decided Aug. 18, 1989.

224

Robert E. Welsh, Jr., John S. Estey, and Jeffrey J. Norton, Montgomery, McCracken, Walker and Rhoads, Philadelphia, for petitioner.

Daniel P. Delany, Chief Counsel, Karen Oill Moury, Asst. Counsel, Michael C. Schnierle, and H. Kirk House, Deputies Chief Counsel, Harrisburg, for P.U.C.

Mary F. Walrath and Susan L. Parsons, Clark, Ladner, Fortenbaugh & Young, Philadelphia, for amicus curiae, Official Unsecured Creditors' Committee of Metro Transp.

Before CRUMLISH, Jr., President Judge, and DOYLE, BARRY, COLINS, PALLADINO, McGINLEY and SMITH, JJ.

PALLADINO, Judge.

Petitioner, Metro Transportation Company (Metro) appeals from an opinion and order of the Pennsylvania Public Utility Commission (PUC) denying Metro's request for self-insurance authorization.

In October, 1985, Metro applied to the PUC for self-insurance status.[1] On July 29, 1986, Metro filed a Petition for Reorganization under Chapter 11 of the Bankruptcy Code.[2] In August, 1986, a hearing was held on Metro's application for self-insurance status, before an administrative law judge (ALJ) of the PUC. At this hearing Metro and the PUC's Law Bureau introduced into evidence a settlement agreement which provided that the proposed self-insurance plan should be approved if sufficient evidence of Metro's financial ability to fund the plan could be presented. After hearing testimony, the ALJ concluded that sufficient evidence was not presented. Therefore, the proposed plan would not provide adequate protection to Metro patrons or the general public. On September 26, 1986, the PUC adopted the decision of the ALJ, and denied Metro's motion for further hearings. The order of the PUC also directed Metro to cease operations as of October 1, 1986, if commercial liability insurance was unavailable.

On September 29, 1986, the Referee in Bankruptcy enjoined the PUC from taking any action to disrupt Metro's operations.[3] This order directed Metro to operate under a self-insurance plan that was monitored by the bankruptcy court from October 1, 1986 through June 1, 1988. Metro continued to seek a rehearing before the PUC on its request for self-insurance status and on November 3, 1986, the PUC granted further hearings. Hearings were then conducted

1. This petition was filed pursuant to Section 512 of the Public Utility Code, 66 Pa. C.S. § 512.

2. 11 U.S.C. §§ 1101–1174 (1989).

3. By order of the United States Bankruptcy Court for the Eastern District of Pennsylvania, Order at 86–0318K, Adversary No. 86–0945. The power of the bankruptcy court to issue this order is derived from 11 U.S.C. § 105(a) (1989), which provides in part:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out provisions of this title.

on March 31, 1987 and April 29, 1987, at which time Metro submitted into evidence the written testimony of Marshall Sherman and Robert Seaner along with 13 separate exhibits.[4] Metro also provided the oral direct testimony of Kevin Walsh, and all three men testified on cross-examination.

On December 29, 1987, the ALJ again denied Metro's application, concluding that (1) Metro did not establish its financial ability to fund the proposed plan on a continuing basis, and (2) it failed to show that the escrow account created for paying claims as they arose, contained sufficient monies to settle claims over the life of the plan. Metro filed exceptions and requested oral argument before the PUC. On April 29, 1988, the PUC issued an order, adopting the ALJ's decision and denying Metro's exceptions and its request for oral argument. Metro filed a Petition for Review with this court and the PUC responded by filing a Motion to Dismiss. Metro also filed a petition for rehearing with the PUC which has not been acted upon and is therefore deemed denied.[5]

On appeal, the PUC argues that this case has become moot. Metro contends that the issues in this case have not

---

4. Marshall Sherman was the third-party administrator of the self-insurance plan Metro operated under the bankruptcy court's direction. Robert Seaner was the Vice President of Operations for Metro, overseeing the financial reporting departments. Exhibits included comprehensive daily accident reports, driver records, a test given Metro drivers in defensive driving instructions, and weekly operating reports.

5. Pa.R.A.P. 1701(b) provides in pertinent part:
   After an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit may:

   . . . . .

   (3) Grant reconsideration of the order which is the subject of the appeal or petition, if:
   (i) an application for reconsideration of the order is filed in the trial court or other government unit within the time provided or prescribed by law; and
   (ii) an order expressly granting reconsideration of such prior order is filed in the trial court or other government unit within the time prescribed by these rules for the filing of a notice of appeal or petition for review of a quasijudicial order with respect to such order, or within any shorter time provided or prescribed by law for the granting of reconsideration. . . .

been rendered moot by its acquisition of third-party commercial insurance coverage. Metro further contends that the PUC erred in denying its request for self-insurance status, and that the PUC abused its discretion in refusing to reopen the record. Finally Metro argues that the denial of both the application and the request to reopen the hearings constitutes unlawful discrimination against a debtor in bankruptcy. We will address these issues seriatim.

■■■■ In Pennsylvania, to avoid dismissal for mootness, an actual case or controversy must exist at all stages of the administrative or judicial process. *Pennsylvania Liquor Control Board v. Dentici,* 117 Pa. Commonwealth Ct. 70, 542 A.2d 229 (1988). Furthermore, when a litigant lacks a necessary stake in the outcome, or when the court or agency is not able to grant effective relief, a case will be dismissed as moot. *Al Hamilton Contracting Co. v. Department of Environmental Resources,* 90 Pa. Commonwealth Ct. 228, 494 A.2d 516 (1985). Although a case is apparently moot, dismissal is not an absolute. If the issue raised is of a recurring nature, is of important public interest, or is capable of repeatedly avoiding review, the case will not be dismissed. *Wilkes Barre Area Vocational School v. Greater Nanticoke Area School District,* 115 Pa. Commonwealth Ct. 73, 539 A.2d 902 (1988).

■■ Because Metro has acquired third-party liability insurance coverage during pendency of this appeal,[6] the PUC would have us dismiss this case as moot without considering the merits. This we decline to do. There is no prerequisite within the statute or regulations that an applicant for self-insurance status must establish lack of commercial insurance. See 66 Pa. C.S. § 512; 52 Pa.Code § 32.15. Metro continues to contend that it can provide adequate protection for its patrons and the general public at a more economically feasible price than third-party coverage would allow. Because of the resulting economic impact involved, we conclude that Metro does have the necessary and con-

6. As of June 1, 1988, Metro secured third-party coverage from United Fire Insurance Company of Des Plaines, Illinois.

tinuing stake in the outcome of these proceedings. Securing coverage in the interim, to continue operating in compliance with the law, is a policy to be encouraged and will not be used as a basis for dismissal of this appeal.[7]

In addressing the merits, Metro contends that the PUC erred in denying its request for self-insurance status. Metro, in order to meet its burden of proof, presented testimony and exhibits to demonstrate its ability to fund the plan. The PUC did not present any evidence at these hearings. After reviewing this evidence, the PUC denied the application.

■ Our scope of review is controlled by our decisions in *Yuhas v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 82 Pa.Commonwealth Ct. 390, 476 A.2d 1377 (1984) and *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988). Where a burdened party is the only party presenting evidence, and it does not prevail before an agency, this court on review must determine whether the agency capriciously disregarded competent evidence. *Russell.* *Yuhas* describes capricious disregard as the "willful, deliberate disbelief of an apparently trustworthy witness, whose testimony one of ordinary intelligence could not possibly challenge or entertain the slightest doubt as to the truth." *Yuhas*, 82 Pa.Commonwealth Ct. at 392, 476 A.2d at 1379.

■ The record[8] before us indicates at least one time when Metro failed to make a payment to the "claims fund"[9] while operating under the direction of the bankruptcy court. There is also evidence of requests by Metro to reduce or delay payments on a number of occasions. These actions

7. We also note that Metro had third-party coverage when it first applied for self-insured status in 1985.

8. The parties agreed by joint stipulation that the record need not be filed with this court. Our review is based upon a reproduced record provided by the respondent PUC.

9. This is another name for the escrow account that the ALJ concluded was not sufficiently funded to allow self-insured status. It is from this fund that Metro would settle claims brought against it.

certainly can be reasons for concern and raise some doubts as to the ability to fund a plan on an ongoing basis. To balance these actions against evidentiary proof of fiscal responsibility does not rise to the level of capricious disregard on the part of the PUC. 66 Pa.C.S. § 512 gives the PUC broad power to protect patrons and the general public. In accordance with this mandate, we hold that the PUC did not err as a matter of law in denying Metro's application.

Metro's next contention is that the PUC should reopen the record for further hearings. Metro asserts that it is now prepared to submit formal financial projections and that this change in facts is sufficient to require that the record be reopened.

The decision to reopen a record is within the discretion of the administrative agency. On review, exercise of that discretion will not be reversed unless a clear abuse is shown. *Fritz v. Department of Transportation,* 79 Pa. Commonwealth Ct. 52, 468 A.2d 538 (1983). Metro has been given adequate opportunity to develop its case for this application. Metro has not set forth any new evidence or changed circumstances that would require this court to reverse for abuse of discretion. *Fritz,* 79 Pa. Commonwealth Ct. at 54–55, 468 A.2d at 539. On the record we have before us, we are convinced there has been no abuse of discretion on the part of the PUC in refusing to grant the petitions for rehearing or reopening of the record.

Finally, Metro asserts that the PUC has engaged in unlawful discrimination against it as a debtor. 11 U.S.C. § 525(a) provides that a governmental unit may not discriminate solely upon the basis of debtor or bankrupt status. It is clear that a state agency can not act so as to frustrate the fresh start policies of the Bankruptcy Code; however, "§ 525(a) would not prohibit a governmental unit from requiring a debtor to prove future financial responsibility." *In Re Elsinore Shore Associates,* 66 B.R. 723, 743 (Bankr. D.N.J.1986). We would consider discrimination in this case to be a blanket refusal to consider Metro's application for

self-insured status; however, sufficient facts have not been alleged to support any claim of discrimination in the case at bar. The PUC is charged with protecting the general public by ensuring that common carriers are able to satisfy claims against them. In considering applications for self-insurance the PUC must necessarily look at the financial stability of the applicant. Such scrutiny is not discrimination, rather it is the agency performing, in a reasonable fashion, the duties that have been delegated to it.

Accordingly, the order of the PUC denying Metro's application for self-insurance and denying Metro's request for rehearing included in its exceptions is affirmed.

## ORDER

AND NOW, August 18, 1989, the Motion to Dismiss filed by the Pennsylvania Public Utility Commission is denied. The order of the Pennsylvania Public Utility Commission dated April 29, 1988 in the above-captioned matter is affirmed.

COLINS, J., dissents.