570 A.2d 637

**LINCOLN INTERMEDIATE UNIT NO. 12, Petitioner,**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF LABOR AND INDUSTRY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 14, 1989.

Decided Feb. 23, 1990.

Paul L. Zeigler, with him, Barbara A. Reynolds, Camp Hill, Goldberg, Katzman & Shipman, P.C., Harrisburg, for petitioner.

Michael L. Harvey, Deputy Atty. Gen., with him, John G. Knorr, III, Chief Deputy Atty. Gen., Chief, Litigation Section, and Ernest D. Preate, Jr., Atty. Gen., and Sandra S. Christianson, Chief Counsel, Dept. of Labor and Industry, for respondent.

Carolyn Angelo, Asst. Counsel, with her, Ernest N. Helling, Acting Chief Counsel, for amicus curiae, Pennsylvania Dept. of Educ.

Before DOYLE and BARRY, JJ., and NARICK, Senior Judge.

## OPINION

BARRY, Judge.

The Lincoln Intermediate Unit, No. 12 (Lincoln), appeals an order of the Department of Labor and Industry's Bureau of Workmen's Compensation (Department) which denied Lincoln's application for self-insured status pursuant to

Section 305 of the Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 501 (Supp.1989–90).

Lincoln was created by Section 902–A of the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *added by* Act of May 4, 1970, P.L. 311, 24 P.S. § 9–952 (Supp. 1989–90). For a long period of time, Lincoln has desired self-insured status and has submitted numerous applications for such status since 1979, all of which were denied by the Department. The present application was submitted in January of 1987 and denied by the Department sometime thereafter. Lincoln then filed a petition for review with this court. By an order dated October 27, 1987, we remanded the matter to the Department to conduct a conference, review the entire record and reconsider its prior denial. That order specifically reserved to Lincoln its right to file a petition for review, if necessary, from any decision of the Department.

The conference was held over the course of several days at which time Lincoln presented evidence in support of its petition. Lincoln also responded to requests for information from the Department. On April 1, 1989, the Department issued its final order denying Lincoln's application. This appeal followed.

Section 305 of the Pennsylvania Workmen's Compensation Act provides in pertinent part:

> Every employer liable ... to pay compensation shall insure the payment of compensation in the State Workmen's Insurance Fund, or in any insurance company, or mutual association or company, authorized to insure such liability in this Commonwealth, unless such employer shall be exempted by the department from such insurance.... An employer desiring to be exempt from insuring the whole or any part of his liability for compensation shall make application to the department, showing his financial ability to pay such compensation, whereupon the department, if satisfied of the applicant's financial ability, shall, ... issue to the applicant a permit authorizing such

exemption.... The department may, from time to time, require further statements of the financial ability of such employer, and, if at any time such employer appear no longer able to pay compensation, shall revoke its permit granting exemption,....

77 P.S. § 501 (emphasis added). The Department denied Lincoln's application, concluding that it was unable to demonstrate the necessary financial wherewithal. For the reasons that follow, we will affirm.

Our research has discovered only one appellate case dealing with the denial of an application to be self-insured. In *United Fruit Co. v. Department of Labor and Industry*, 344 Pa. 172, 25 A.2d 171 (1942), the Supreme Court reversed a departmental denial of the employer's application. The employer there was a foreign corporation whose only Pennsylvania employees were stevedores, wharf laborers and clerical office workers. The employer was under no obligation to register with the state because of elementary principles of constitutional law. The employer had been granted the right to be self-insured for each of the preceding twenty years. When the employer sought the exemption for 1941, the application was denied. The Commonwealth informed the employer that the application for the exemption would be granted *if the employer registered with the state.* The Court of Common Pleas of Dauphin County held that such action was an abuse of discretion; it ordered the department to grant the application. The Supreme Court affirmed.

At that time, Section 305 contained the following provision which has since been deleted by amendment. "From a refusal of the department to issue such permit, an appeal shall lie to the court of common pleas of Dauphin County. In any such appeal the only question shall be whether the department abused its discretion in refusing such permit." Despite the legislature's deletion of this provision, we believe the standard of review is essentially the same.

As the Supreme Court stated over forty years ago:

[I]t has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have reached a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion.

*Blumenschein v. Pittsburgh Housing Authority*, 379 Pa. 566, 573, 109 A.2d 331, 334–35 (1954) (emphasis in original). This court has held that we may not substitute judicial discretion for administrative discretion where the administrative determination being reviewed involves technical expertise and special knowledge or competence on the part of the administrative tribunal. *Swartwood v. Department of Environmental Resources*, 56 Pa.Commonwealth Ct. 298, 424 A.2d 993 (1981). We must also remember Section 704 of the Administrative Agency Law, which states that a court should affirm the agency's decision unless there is a violation of constitutional rights, an error of law or necessary factual findings which are not supported by substantial evidence. 2 Pa.C.S. § 704. Finally, we must take note of our recent pronouncement in *Metro Transportation v. Public Utility Commission*, 128 Pa.Commonwealth Ct. 223, 563 A.2d 228 (1989). There, *Metro* was appealing the PUC's decision refusing *Metro*'s application to be self-insured. *Metro* was the only party that presented evidence. We stated, "Where a burdened party is the only party presenting evidence, and it does not prevail before an agency, this

court on review must determine whether the agency disregarded competent evidence." *Id.,* 128 Pa.Commonwealth Ct. at 229, 563 A.2d at 231. We affirmed, holding that the PUC committed no error in refusing *Metro*'s application.

█ We believe the decision of the Department in this case is one which falls within the area where judicial deference is required. After all, it is the Department which is charged with the responsibility of enforcing the law and regulating its administration. *See* preamble to Section 406.1 of the Law, *added by* Act of February 8, 1972, P.L. 25, 77 P.S. § 717.1 (Supp.1989–90). Section 305 of the Act states that the Department should grant an employer's application "if satisfied of the applicant's financial ability" and further requires the Department to revoke the exemption if "at any time such employer *appears* no longer able to pay compensation". This language used by the legislature convinces us that these decisions are within the administrative discretion of the Department. Of course, we must also be cognizant of the standard of review required by 2 Pa.C.S. § 704 and our decision in *Metro Transportation.*

Lincoln makes a number of allegations of error. It first argues that the Department committed an error of law in deciding that Lincoln did not have the requisite financial ability to pay compensation. It also argues that the Department abused its discretion in this regard, having capriciously disregarded evidence submitted by Lincoln. Finally, it argues that Section 305 of the Act should be declared void for vagueness. Before proceeding to discuss Lincoln's arguments, a discussion of the evidence presented is required.

Lincoln provides a variety of services for twenty-five school districts in York, Adams and Franklin counties. It is governed by a thirteen member board of directors, all of whom are members of the board of directors of the individual school districts. 24 P.S. § 9–960. Lincoln's board of directors prepares its budget for the following year in November and December. That budget must then be reviewed by the superintendents of each of the member school districts, and must be approved by the individual

school boards of each member district. The budget is then presented in May to the Commonwealth's Department of Education. As a general rule, the Commonwealth provides 85–90% of Lincoln's funding by way of subsidy. Section 920–A(a) of the School Code provides, "Where the approved budget exceeds the allocation to the intermediate unit, each school district within the intermediate unit shall contribute to the intermediate unit a share of the amount by which the budget exceed the allocation...." 24 P.S. § 9–970. Lincoln has no taxing authority. Furthermore, it cannot accumulate a surplus since all unspent monies must be returned to the Commonwealth, the individual school districts or both.

In 1988, Lincoln paid over $82,000 in insurance premiums for its workmen's compensation coverage. It estimated that it could save between $25,000 to $40,000 a year if it was self-insured. It also had inventory consisting of equipment with a replacement value of almost $4,000,000, buildings with a replacement value of $41,000 and machinery and equipment valued on its balance sheet at almost $1,200,000.

Lincoln presented testimony concerning the Delaware Valley School District Self–Insured Workmen's Compensation Association, a group of forty-six school districts. Two witnesses explained how the Association functioned. They testified concerning the history of the Association with regard to paying claims. For our purposes, it is sufficient to note that the possibility exists that the individual members of the Association would be assessed to pay claims. These witnesses testified that Lincoln had expressed interest in joining the Association.

Finally, the hearing officer for the Department asked Lincoln's counsel to provide a guaranty from the individual districts making up the intermediate unit for its workmen's compensation liability. Lincoln attempted to obtain the necessary guaranty, but indicated to the Department that some of the member districts were not willing to sign the guaranty agreement.

Shortly thereafter, the Director of the Workmen's Compensation Bureau issued his findings of fact and conclusions of law. He denied Lincoln's application, essentially because Lincoln had to depend on outside entities for its funding and had no taxing power of its own. He also relied upon the inability of Lincoln to obtain a guaranty from all member districts.

As previously mentioned, Lincoln raises a number of issues in this appeal. In spite of the categorization employed by Lincoln, we believe two questions must be answered. First, did the Department abuse its administrative discretion in concluding that Lincoln did not have the financial ability to pay compensation? Subsumed within that question is the question of whether the Department's reliance on the inability to obtain a guaranty was somehow error. Finally, are Section 305's provisions concerning self-insurance void for vagueness? Because we answer all of these questions in the negative, we will affirm.

■ All of Lincoln's arguments concerning its ability to pay are premised upon the assumption that it can obtain whatever is required from the various sources of funding. While it may very well be true that Lincoln has always been able to pay all of its bills, it cannot be disputed that Lincoln does not have the power to tax. Without the power to tax, a governmental unit is essentially dependent upon the whim and fancy of those with the taxing power for the required funding.[1]

Lincoln argues that the Department treated it differently from other employers in deciding whether to grant the exemption. The Department's denial was based, at least partly, on a worst case scenario involving an extraordinary

---

1. Lincoln has failed to cite any authority that it would be able, by way of a writ of mandamus, to compel any of the funding bodies to provide monies to pay for compensation claims if funds were not available. Therefore, Lincoln's situation is different from that of the courts which, while having no power to tax, can compel funding for those things reasonably necessary for their operation. *Leahey v. Farrell*, 362 Pa. 52, 66 A.2d 577 (1949); *Commonwealth ex rel Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193 (1971) (plurality opinion); and *Beckert v. Warren*, 497 Pa. 137, 439 A.2d 638 (1981).

number of claims in a short period. Lincoln argues that if this logic was applied to any employer, be it public or private, then no exemption should be granted. While there is some merit to Lincoln's argument, the argument should more properly have been made before the Department than before us, since it is the Department that has discretion in deciding these cases.

We cannot find fault with the Department's reliance on Lincoln's inability to obtain a guaranty from the funding school districts. Again it is inarguable that Lincoln does not have the power to tax. That power rests with the Commonwealth and the school districts. Yet, these districts would not provide a guaranty concerning future obligations of Lincoln. If all other circumstances were identical and such a guaranty been provided, it may well be that under those circumstances the Department would have abused its discretion in refusing the exemption. The guaranty, however, was not provided and because of this, we cannot say that the Department abused its discretion.

■ Lincoln argues that Section 305 is unconstitutionally vague and therefore offends due process. We note initially that arguments concerning vagueness normally arise in a situation where one is threatened with criminal sanctions by a statute "in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application...." *Lanzetta v. State of New Jersey*, 306 U.S. 451, 453, 59 S.Ct. 618, 619, 83 L.Ed. 888 (1939). Even if the concept of "void for vagueness" applies to this situation, we do not believe Section 305 is unconstitutionally vague. As we are not dealing with fundamental rights of Lincoln, Section 305 meets constitutional muster. Our belief is based on the concept, familiar in equal protection analysis, that economic legislation that does not involve suspect classifications is constitutional if the classification bears some rational relationship to a legitimate state end. *Martin v. Unemployment Compensation Board of Review*, 502 Pa. 282, 466 A.2d 107 (1983). Furthermore, classifications can be constitutional even if "not made with

mathematical nicety" or where they result "in some inequality." *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1161, 25 L.Ed.2d 491 (1970). In the present case, Section 305 is concerned with society's protection of its members injured on the job, certainly a legitimate state end. Section 305 allows exemptions from the purchase of liability insurance to those employers that can satisfy the Department of financial ability to pay compensation. We can find no fault with the Legislature's determination that such decisions are left to the Department, the only limitation being that the Department cannot abuse its discretion in deciding those questions.

In summation, if this Court were given the Department's function of deciding this question in the first instance, we may well have decided it differently. It is not our function, however, to substitute our judgment for that of the Department. As we can find no abuse of Departmental discretion nor an error of law, we must affirm.

### ORDER

NOW, February 23, 1990, the order of the Department of Labor and Industry, Bureau of Workmen's Compensation, dated April 1, 1989 is affirmed.