**CITY OF SCRANTON, Petitioner,**

v.

**BUREAU OF WORKERS' COMPENSATION, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted June 8, 2001.

Decided July 24, 2001.

Reconsideration Denied Sept. 21, 2001.

---

James R. Mulligan and A. Leigh Redmon, Scranton, for petitioner.

Thomas P. Howell, Harrisburg, for respondent.

Before DOYLE, President Judge, and SMITH, J., and FLAHERTY, Senior Judge.

FLAHERTY, Senior Judge.

The City of Scranton (Employer) petitions for review of an order of a Hearing Officer which affirmed the decision of the Department of Labor and Industry, Bureau of Workers' Compensation (Bureau) denying Employer's application to renew self-insurance status under the Workers' Compensation Act (Act).[1] We affirm for the reasons set forth below.

Initially, we note that pursuant to Section 305 of the Act, 77 P.S. § 501, an employer may elect to self-insure its liability for the payment of workers' compensation benefits by applying for self-insurance status with the Bureau. Even if an employer is allowed to self-insure, however, it must make a yearly renewal application as required by Section 305(3).

Employer has maintained self-insurance status since 1979 as allowed by Section 305 and, in 1995, the Bureau began requiring Employer to maintain a trust fund for the payment of workers' compensation benefits. On December 17, 1999, Employer filed an application for renewal. Pursuant to 34 Pa.Code § 125.6(a)(1)-(11), the Bureau considered the following factors in assessing Employer's ability to meet its obligations under the Act:

(1) The audit opinion required under § 125.3(c)(3) (relating to application).

(2) The length of time that the applicant has been doing business under its present corporate identity.

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2606.

(3) The applicant's overall solvency, identified as its ability to meet its financial obligations as they come due.

(4) The applicant's organizational structure and management background.

(5) The nature of the applicant's operations and its industry.

(6) Financial analysis appropriate for the particular applicant, including for example, industry ratio and cash flow analyses.

(7) The applicant's debt ratings from National financial rating agencies, if any.

(8) The applicant's workers' compensation loss history and insurance history.

(9) The applicant's potential financial workers' compensation obligations, including average expected claims and maximum possible loss as limited by the excess insurance coverage obtained by the applicant, if any.

(10) The applicant's claims administration history and compliance with the act, the Occupational Disease Act and this part.

(11) *The existence and adequacy of the applicant's accident and illness prevention program required under section 1001(b) of the act (77 P.S. § 1038.1(b)) and regulations thereunder.*[2]

(emphasis added).

By letter dated January 25, 2000, the Bureau denied Employer's renewal application because of: 1) Employer's failure to maintain an adequate accident and illness prevention program as required by Section 1001 of the Act, 77 P.S. § 1038.1; 2) Employer's unstable financial condition and 3)

Employer's failure to honor the terms of its January 1, 1995 trust agreement. (Exhibit C–5). Thereafter, as allowed by Section 125.6(f), Employer requested a reconsideration conference with the Bureau, where it presented additional evidence in support of its application. On April 6, 2000, the Bureau issued a reconsideration decision pursuant to Section 125.6(g) again determining that Employer's renewal application should be denied. As to the accident and illness prevention program, the reconsideration decision stated that:

> This Bureau has already determined that the Accident and Illness Prevention Program of the City is inadequate. Obviously, significant work has recently occurred to document the existence of the program. Nevertheless, we are not in a position to judge the adequacy of the Accident and Illness Prevention Program through this renewal application proceeding.

(Exhibit C–6).

Employer appealed the reconsideration decision as provided for in Section 125.6(h), and the Bureau appointed a workers' compensation judge as a Hearing Officer for the purpose of hearing Employer's appeal.

At the hearings before the Hearing Officer, the Bureau presented the testimony of George Knehr, who has been the Chief of the Bureau's Self Insurance Division since 1988. Mr. Knehr explained that when the Bureau examines renewal applications "basically we're looking to make sure that, without a doubt, that the applicant will be able to liquidate its Workers' Compensa-

---

**2.** Section 1001(b) provides that:

 (b) **A self-insured employer shall maintain an accident and illness prevention program as a prerequisite for retention of its self-insured status.** Such program shall be adequate to furnish accident prevention required by the nature of its business and shall include surveys, recommendations, training programs, consultations, analyses of accident causes, industrial hygiene and industrial health services. The self-insured employer pursuant to its responsibilities under this section shall employ or otherwise make available qualified accident and illness prevention personnel. Such personnel shall meet the qualifications set forth in regulations issued by the department.

77 P.S. § 1038.1(b) (emphasis added).

tion liabilities, both now and into the foreseeable future ... without the applicant having any financial difficulties at all." (N.T. 7/10/00, p. 7). After reviewing Employer's renewal application, the Bureau determined that, based on the audit report submitted as part of the application, Employer was in an unbalanced position in that its expenditures had exceeded its revenues by 1.9 million dollars in the fiscal year 1998 and it had a carryover deficit of 6 million dollars from previous years. Despite Employer's financial troubles, Mr. Knehr did confirm that it has never missed a workers' compensation payment. As to the trust fund established in 1995, Mr. Knehr testified that, although Employer was supposed to be paying into the trust fund and also paying workers' compensation benefits out of the fund, it had failed to do so. He also noted that Employer admitted to paying workers' compensation benefits out of its operating budget rather than the trust fund because of a severe cash-flow shortage. With regard to Employer's accident and illness prevention program, Mr. Knehr testified that, at the time of Employer's renewal application, the Bureau's Health and Safety Division had determined that Employer's program was inadequate. Employer appealed this determination, but subsequently withdrew its appeal. Based on all these factors, Mr. Knehr determined that Employer should not be allowed to continue to self-insure.

At the reconsideration conference, Employer presented additional evidence in support of their renewal application, including an extensive Accident and Illness Prevention Program manual. However, Mr. Knehr testified that the only discussion with respect to this manual was regarding why it was not provided earlier. In addition, Employer proposed utilizing a bond issue and selling some of its assets in order to buy out some old workers' compensation claims and to help fund the trust fund. (N.T. 7/10/00, pp. 62–64).

Employer presented the testimony of Brian Nixon, who is the business administrator for Employer. He testified that Employer was supposed to have been paying workers' compensation benefits from the trust fund, but that this never happened. Ronald Madajeski, a professional insurance agent and broker hired by Employer, also testified. He also confirmed that Employer never fully funded the trust fund or used it to pay workers' compensation claims.

By decision and order dated November 13, 2000, the Hearing Officer concluded that the Bureau did not abuse its discretion when it determined that Employer's application for renewal should be denied because it failed to demonstrate that it was able to meet all of its obligations under the Act. However, the Hearing Officer did determine that the Bureau abused its discretion by declining to determine whether Employer's accident and health prevention program was adequate at the time of the reconsideration conference. Despite his finding that the Bureau abused its discretion regarding the accident and health prevention program, the Hearing Officer affirmed the decision of the Bureau. Employer appeals arguing that the Bureau abused its discretion in denying its renewal application.

With regard to this Court's scope of review "it has been established as an elementary principle of law that courts will not review the actions of governmental bodies or administrative tribunals involving acts of discretion, in the absence of bad faith, fraud, capricious action or abuse of power; they will [also] not inquire into the wisdom of such actions or into the details of the manner adopted to carry them into execution. It is true that the mere possession of discretionary power by an administrative body does not make it wholly immune from judicial review, but the scope of

that review is limited to the determination of whether there has been a manifest and flagrant abuse of discretion or a purely arbitrary execution of the agency's duties or functions. That the court might have a different opinion or judgment in regard to the action of the agency is not a sufficient ground for interference; *judicial* discretion may not be substituted for *administrative* discretion." *Blumenschein v. Housing Authority of Pittsburgh,* 379 Pa. 566, 573, 109 A.2d 331, 334–335 (1954) (emphasis in original) *See also Lincoln Intermediate Unit No. 12 v. Commonwealth of Pennsylvania, Department of Labor and Industry,* 131 Pa.Cmwlth. 439, 570 A.2d 637 (1990).[3]

■ Section 1001 of the Act provides that the maintenance of an accident and illness prevention program is a prerequisite to maintaining self-insurance status. Furthermore, it is undisputed that the Bureau's Health and Safety Division found Employer's program to be inadequate and that, although Employer appealed this determination, its appeal was subsequently withdrawn. Because of its failure to appeal, the Bureau was correct in not allowing Employer to try to change this determination at the reconsideration conference, given that the Self Insurance Division is not even vested with the responsibility of determining the adequacy of this type of program. Rather, this authority is vested with the Health and Safety Division. Therefore, we disagree with the Hearing Officer that the Bureau abused its discretion in failing to consider the new evidence concerning the program at the reconsideration conference. Section 125.6(h)(5)(i) provides that "[a]n applicant which has been denied self-insurance may reapply after an annual audit report is published subsequent to the last one submitted with the denied application." An appropriate course of conduct for Employer would have been to seek a new determination from the Health and Safety Division as to the adequacy of its accident and illness prevention program and then re-apply for a renewal of its self-insurance status as provided for in Section 125.6(h)(5)(i). Because Employer did not follow this course of action, it could not seek to, in effect, appeal the Health and Safety Division's determination at the reconsideration conference with the Self Insurance Division. Therefore, because Employer failed to comply with Section 1001 of the Act, which is a prerequisite to receiving permission to self-insure, the Bureau did not abuse its discretion by denying Employer's renewal application.[4]

Accordingly, although the Hearing Officer erred by finding that the Bureau abused its discretion by failing to reconsider the adequacy of Employer's accident and illness prevention program but affirmed the decision of the Bureau on different grounds, the decision of the Hearing Officer is nevertheless affirmed.[5]

**3.** Employer argues that, because it had the burden of proof, was the only party to submit evidence and did not prevail, this Court should apply the capricious disregard standard of review. We disagree. The Bureau presented evidence in the form of the testimony of George Knehr, the Chief of the Bureau's Self Insurance Division. Therefore, the capricious disregard standard is not the appropriate standard of review.

**4.** Because the maintenance of an accident and illness prevention program is a prerequi-

site to receiving permission to self-insure, we do not need to address Employer's argument that the Bureau abused its discretion in other aspects of its determination.

**5.** This Court may affirm the order of a lower court if the result reached is correct without regard to the grounds relied upon by that court. *Moorhead v. Crozer Chester Medical Center,* 564 Pa. 156, 159, 765 A.2d 786, 787 n. 2 (2001).

## ORDER

AND NOW, July 24, 2001, the order of the Hearing Officer affirming the decision of the Department of Labor and Industry, Bureau of Workers' Compensation, is AFFIRMED based on the reasoning set forth in the foregoing opinion.