546 A.2d 1315

Colton Real Estate Corporation, Appellant *v.* West Conshohocken Zoning Hearing Board, Appellee.

Argued June 14, 1988, before Judges CRAIG, BARRY and SMITH, sitting as a panel of three.

*Gregory J. Dean,* for appellant.

*Edward F. Kane,* for appellee.

OPINION BY JUDGE CRAIG, August 31, 1988:

Colton Real Estate Corporation appeals an order of the Court of Common Pleas of Montgomery County, affirming a decision of the West Conshohocken Zoning Hearing Board that denied Colton's request for use and height variances to accommodate a sign. The order must be vacated and the case remanded for additional consideration by the board.

The basic facts, which are not disputed, are as follows. In 1982, Colton purchased a parcel of land located in the Borough of West Conshohocken from the executor of the estate of Albert H. Bien. The lot was part of a larger tract of land that the Commonwealth of Pennsylvania had condemned in 1952 for the construction of the Schuylkill Expressway and the Conshohocken access ramps. The parcel is landlocked and about 7,994 square feet in area; it extends 380 feet along the southern edge of the right-of-way of the westbound lanes of the expressway; the northern boundary runs about 379 feet along the rear of residences. The expressway is thirty feet above the property.

As indicated by a finding of the board, which is consistent with site plans in the record, the parcel constitutes a narrow triangular wedge, having 380-foot sides roughly parallel to the expressway, a short 38-foot base to the east and an apex coming to a point at its westerly end.

Colton filed a zoning application to erect, on the triangular landlocked parcel, a sixty-foot free-standing advertising sign. On April 8, 1987, the board held hearings on Colton's requests for variances from use and height restrictions.

Because the parcel is in an R-2 Residential District, the proposed sign apparently is not a permitted use, and section 113-65 of the Zoning Ordinance prohibits any structure more than thirty-five feet high. Section

96-9C of the borough's Sign Ordinance prohibits signs more than fifteen feet above ground level; the board permitted Colton, at the time of hearing, to amend its application to include a variance request as to the Sign Ordinance height limit. The record does not indicate what power, if any, the board possesses with respect to granting variances as to the Sign Ordinance, which apparently exists separately from the Zoning Ordinance.

The board issued its decision denying the requested variances on April 8, 1987, holding that Colton had not established "the requisite hardship necessary to grant a variance. . . ." Colton appealed the board's decision to the Court of Common Pleas, which affirmed the board's denial.

Because the Court of Common Pleas took no additional evidence, our scope of review is restricted to whether the board abused its discretion or committed an error of law. Abuse of discretion occurs only if the board's findings are not supported by substantial evidence. *Valley View Civic Association v. Zoning Hearing Board*, 501 Pa. 550, 462 A.2d 637 (1983).

In order to obtain the requested variances, Colton must sustain the stringent burden of proving (1) that the ordinance imposes unnecessary hardship on the property; (2) that the hardship stems from unique physical characteristics of the property; (3) that the variances would not adversely affect the health, safety or welfare of the general public; (4) that the hardship was not self-inflicted; and (5) that the variances sought are the minimum that will afford relief. *Vacca v. Zoning Hearing Board of Dormont*, 82 Pa. Commonwealth Ct. 192, 475 A.2d 1329 (1984); 53 P.S. §10912.

### Unnecessary Hardship

In *Poster Advertising Company v. Zoning Board of Adjustment*, 408 Pa. 248, 182 A.2d 521 (1962), our Su-

preme Court held that the refusal of a board to grant the requested use variance, coupled with the effect of the ordinance, imposed an unnecessary hardship on the lessee because the board's decision precluded any residential or other productive use of the property. The Court reasoned that:

> The size and dimension of the land as presently constituted prevent the construction and use thereon of any residence property. The conclusion of the board to the contrary was not justified. In fact, the size and dimension permit a very limited number of productive uses, the most likely and practical being that contemplated. If this use is denied, the owner will be compelled to continue to pay taxes thereon, maintain the actual surface and adjoining sidewalks in a clean and reasonably safe condition in order to escape possible damage claims, without any return from the use of the property whatsoever.

408 Pa. at 251, 182 A.2d at 523-24.

Thus, in a case involving land similar to the parcel in this case, the Supreme Court indicated the potential availability of a validity variance to allow some use of land if its unique shape and situation makes it unuseable for any of the uses allowed by the zoning ordinance in the district where the land lies.

During the hearing in this case, Mr. Edward Ritti, President of Colton Real Estate testified:

> Q.   So the yard provisions of the ordinance would prohibit any development; is that correct?
>
> A.   Any building development.
>
> Q.   Any building development in accordance with the R-2 regulation?
>
> A.   As I read it, that's correct.
>
> . . .

Q. As a result of reviewing the ordinance, do you have any conclusions in developing this property in accordance with the R-2 regulations?

A. I don't think it can be done.

. . .

Q. Is there any possibility of you acquiring additional property abutting this lot to expand it in order to conform to the zoning regulations?

A. I have already talked to PennDot and I'm not able to buy right-of-way on the east or right-of-way on the south.

Possibly, Colton's property has unique physical and topographical features that impose severe constraints upon the development of the property for an R-2 permitted use. However, the board made no finding on this key point one way or the other.

The above testimony and the site plan in the record indicate that this slim wedge is indeed not useable for the construction of any residence. But we have searched both the original record and the reproduced record in vain seeking to find the ordinance provisions which would tell us what all the permitted uses are in this location. We cannot assume that only dwellings are allowed. Zoning ordinances governing residential districts often allow some uses in addition to dwellings, such as utility facilities, playgrounds and other miscellaneous uses. This court, of course, cannot guess or speculate. Nor can we construct a finding on the matter of available uses when the board has made no finding and the parties have not revealed to us all the pertinent ordinance provisions.

A remand to the board is necessary to obtain a finding on whether the land can be used for any of the purposes permitted by the ordinance for this district.

## Adverse Effect on Neighborhood

The record contains no substantial evidence to support the board's implicit finding that a detriment to the public health, safety and welfare would result, as conveyed by the board's statement that the proposed use "would substantially injure and detract from the use of neighboring property and from the character of the neighborhood."

Looking for any possible basis for that statement, we have examined all the evidence. Colton's witness testified that any impact on abutting properties would be "minimal", and that the sign and its lighting would not be directed toward the homes near the property. Testimony from the neighboring property owners provided only argumentative matter, such as the following:

> Mr. Reimer: I feel that our borough has been cross-cut twice by two county expressways, and we have been penalized by these expressways which we have no regulation over. Now I don't want to see a Burma Shave sign in effect dotting these expressways. . . .
>
> . . . .
>
> Mr. Siders: [I]f he wants to put that sign up, why don't he take it and put it over in West Chester or Coatesville? We don't need it, . . . Why don't they go back where they belong? We don't need your signs.
>
> . . . .
>
> Mr. Rishel: And I don't want to see any building on that paper street unless we can detain that water coming onto my property. . . .
>
> . . . .
>
> Mr. Powers: I would like to go down as totally opposed to the idea, not just because of the water but because as this gentleman mentioned,

there are many problems that exist alongside the expressway since the construction that haven't been adequately cleared. And for the borough to become just a billboard, well, I go down as opposed.

The absence of evidence in the record as to neighborhood detriment is not offset by the trial judge's understandable comment as to the "absurd" nature of Colton's claim that the sign will have impact only upon the expressway and not upon the neighborhood. The trial judge is undoubtedly correct in expecting that the proposed sign would indeed have some impact upon the residences, but nothing in the record establishes just what that impact would be.

### Self-inflicted Hardship Question

The board's Finding No. 7 states:
Petitioner was not aware of the ordinances regulating signs at the time of purchase nor did Petitioner inquire as to the existence of any sign ordinance prior to purchase.
This finding suggests that Colton had some duty to check the zoning ordinance and for that reason should be denied the variances on the basis that any hardship was self-inflicted. However, the hardship which arises from the shape limitations of the parcel was not created by the landowner, but by the state in connection with development of the expressway.

In *Harper v. Ridley Township Zoning Hearing Board,* 21 Pa. Commonwealth Ct. 93, 343 A.2d 381 (1975), our court stated:
The Board found that '[s]ince [both owners] acquired the premises with knowledge of the zoning regulations any hardship they claim is self-imposed and cannot serve to justify the grant of a variance.' The Board apparently reached this

conclusion by relying on McClure Appeal, 415 Pa. 285, 203 A.2d 534 (1964) and other cases cited by the Township for the proposition that one who seeks a variance cannot be heard to complain of a hardship when that hardship was present to his knowledge when he purchased the property. More recently, however, in Gro Appeal, 440 Pa. 552, 269 A.2d 876 (1970) our Supreme Court has narrowed the circumstances under which a landowner who purchases with knowledge of the property's condition and the existing zoning classification will be prevented from obtaining a variance. According to Gro, such a landowner's hardship is self-inflicted only where he has paid a high price for the property because he assumed that a variance which he anticipated would justify that price. The mere fact that he purchased with knowledge of the hardship would not alone preclude his being granted a variance. (Citations omitted.)

93 Pa. Commonwealth Ct. at 97-98, 343 A.2d at 384.

This record contains no evidence on which to base any finding or conclusion that the hardship can be disregarded as a self-imposed one. *H.A. Steen Industries, Inc. v. Zoning Hearing Board of Bensalem Township,* 48 Pa. Commonwealth Ct. 469, 410 A.2d 386 (1980).

### Deemed Approval

Finally, Colton raises a question about whether the decision of the zoning hearing board must be deemed to be an approval of the application because Colton offered uncontradicted testimony that the board failed to provide prompt notification of its decision as required by section 908(10) of the Pennsylvania Municipalities Planning Code, which provides:

> A copy of the final decision . . . shall be delivered to the applicant personally or mailed to him not later than the day following its date.

Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10908(10).

The decision was dated April 8, 1987, but was not mailed until April 15, 1987. However, in *Vacca,* 82 Pa. Commonwealth Ct. at 192, 475 A.2d at 1329, we held that section 908(10) is directory rather than mandatory, and the board's failure to comply strictly with its terms does not mandate a decision in the applicant's favor.

## Conclusion

Accordingly, this court must vacate the order of the trial court and remand this case with a direction that the board make findings with respect to whether the specific provisions governing the R-2 Residential District allow any use which could be applied to the parcel in question.

Moreover, although no party has informed the court about the power of the zoning hearing board, if any, to grant variances with respect to the Sign Ordinance height limitation, that matter involves a problem of the board's jurisdiction which we cannot ignore. Therefore, on remand, the board should also make findings and conclusions with respect to the Sign Ordinance and the granting or refusing of a variance as to its height limit.

On remand, the board and court shall receive no additional evidence except that which may be necessary to resolve the above two matters.

## ORDER

Now, August 31, 1988, the order of the Court of Common Pleas of Montgomery County, dated October 27, 1987, is vacated, and this case is remanded to that court, with a direction to remand to the Zoning Hearing

Board of West Conshohocken to make findings as specified in the Conclusion of the foregoing Opinion. Jurisdiction is retained by this court, for certification back to it. All proceedings on remand shall be completed and the record shall be returned to this court within 90 days after the date of this order.