631 A.2d 1106

**WEICHERT AD & P INC., Petitioner,**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 11, 1993.

Decided Sept. 20, 1993.

478

Gregory J. Dean, for petitioner.

Thomas R. Haist, Asst. Counsel, for respondent.

Before PALLADINO, FRIEDMAN and KELLEY, JJ.

FRIEDMAN, Judge.

Weichert AD & P, Inc. (Weichert) petitions for review of an order of the Secretary of the Department of Transportation

(DOT) which denied Weichert's application for a permit to erect an advertising sign adjacent to an interstate highway. We affirm.

In order to erect a sign within 660 feet of and visible from an interstate highway, an applicant must apply for and receive a permit for an outdoor advertising sign from DOT pursuant to the Outdoor Advertising Control Act of 1971, Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. § 2718.101–2718.115 (Act). The Pennsylvania legislation was enacted to comply with federal requirements as a condition to the receipt of federal highway funds. Comparable laws have been enacted in the other 49 states. In accordance with the Act, Weichert sought DOT's approval to place an advertising sign on land adjacent to the Schuylkill Expressway in the Borough of West Conshohocken.

Weichert's predecessor in title, Colton Real Estate Corporation, sought and, after several appeals, received a use and height variance from the local zoning and sign ordinances for construction of a 60 foot,[1] free-standing advertising sign on an irregularly shaped piece of property adjacent to the Expressway.[2] Pursuant to this variance, Weichert applied for and received a building permit for construction of the sign. Weichert then applied to DOT for an advertising device permit

1. Variances from both use and height restrictions were required because, pursuant to the zoning ordinance, signs are not a permitted use in the residential district in which this property is located and permitted structures are limited to a maximum height of 35 feet. Where permitted, a separate sign ordinance restricts signs to a height of 15 feet. (R.R. at 41a.)

2. The facts of the case, as stated in *Colton Real Estate Corporation v. W. Conshohocken Zoning Hearing Board*, 119 Pa.Commonwealth Ct. 205, 546 A.2d 1315 (1988) are:

    In 1982 Colton purchased a parcel of land located in the Borough of West Conshohocken from the executor of the estate of Albert H. Bien. The lot was part of a larger tract of land that the Commonwealth of Pennsylvania had condemned in 1952 for the construction of the Schuylkill Expressway and the Conshohocken access ramps. The parcel is landlocked and about 7,994 square feet in area; it extends 380 feet along the southern edge of the right-of-way of the westbound lanes of the expressway; the northern boundary runs about 379 feet along the rear of residences. The expressway is thirty feet above the property.

pursuant to the requirements of the Outdoor Advertising Control Act. DOT denied the application because the property is located in a residential zone in which the Act does not permit erection of outdoor advertising signs visible from and within 660 feet of the expressway. After a hearing, the department hearing officer proposed affirmance of DOT's permit denial, which the Secretary of DOT made final by order dated October 15, 1992.

On appeal to this court from DOT's determination,[3] Weichert first argues that DOT changed its reasons for denial, basically invalidating the original denial. This argument is based upon a supplemental "permit denied notice," issued by DOT on December 10, 1991, which supplemented and corrected the original denial notice of October 2, 1991. The remarks section of the October notice stated two reasons for the denial: (1) that pursuant to section 4(1)(vi) of the Act "signs must be on commercial or industrial zoned areas," whereas this property is located in a residential zone; and (2) that "no structure may be erected adjacent to or within 500 feet of an interchange." The December notice retained the first reason, although modifying the section reference from section 4(1)(vi) to section 4(1)(iv) and (v) to reflect the fact that the Schuylkill Expressway is an interstate highway rather than a primary highway. In the December notice, DOT also deleted its original second reason and substituted another not relevant here. Elimination of the second reason for denial does not present a problem as long as a valid reason for the denial remains. Modification of the first reason is also not a problem in this case because the primary reason for the denial, location of the sign on property in a residentially zoned area, did not change. Inadequacies in an original notice can be cured. *See, e.g., Clark v. Department of Public Welfare,* 58 Pa.Common-

3. Our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed, or whether any necessary finding of fact is not supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Penn Advertising, Inc. v. Department of Transportation,* 147 Pa.Commonwealth Ct. 624, 608 A.2d 1115, *appeal denied,* 532 Pa. 666, 616 A.2d 987 (1992).

wealth Ct. 142, 427 A.2d 712 (1981). Procedural due process requirements are satisfied if notice of administrative agency action "is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id.* at 146, 427 A.2d at 714, quoting *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Thus, DOT's supplemental notice did not invalidate the original denial.

■ Secondly, Weichert argues that the Department erred in denying the advertising device permit because it was bound by the variance and by the building permit issued by the municipality. The Act, which DOT administers, is part of a national scheme to control the proliferation of advertising along interstate highways. Failure to comply with federal requirements can result in reduction of federal highway funds, necessitating increased state taxation to fund state roads. Section 2 of the Act, 36 P.S. § 2718.102. *Patrick Media Group, Inc. v. Department of Transportation,* 533 Pa. 188, 620 A.2d 1125 (1993). Local zoning comes into play because the Act permits the placement of outdoor advertising devices in areas which are zoned commercial or industrial. Section 4 of the Act, 36 P.S. § 2718.104. The Act controls the location, size, spacing and lighting of signs. With regard to location, the Act provides in pertinent part:

To effectively control outdoor advertising, while recognizing it to be a legitimate commercial use of property and an integral part of the business and marketing function, *no outdoor advertising device shall be erected or maintained:* (1) within six hundred sixty feet of the nearest edge of the right-of-way *if any part of the advertising or informative contents is visible from the main-traveled way of an interstate or primary highway, except:*

. . . .

(iv) Outdoor advertising devices *in zoned* or unzoned *commercial or industrial areas* along those portions of the

interstate system constructed on right-of-way, any part of the width of which was acquired on or before July 1, 1956.[4]

Section 4(1)(iv) of the Act, 36 P.S. § 2718.104(1)(iv) (emphasis added). For purposes relevant here, the Act permits outdoor advertising signs along the interstate system when the property on which the sign would be located is in an area reserved for commercial and industrial purposes. Pursuant to the Act's definitions,[5] outdoor advertising signs are not considered commercial or industrial uses.

The property for which Weichert sought this permit is zoned residential. However, on appeal from the zoning hearing board's denial of a variance from the restrictions of the local zoning ordinance, this court previously determined that the conditions for a variance from the restrictions of the local

---

4. Because the right-of-way was acquired before 1956 and because the Schuylkill Expressway is an interstate highway, this subsection applies. The same rule, applicable to other interstate highways and to primary highways, is expressed in subsections v and vi.

    (v) Outdoor advertising devices in areas zoned commercial or industrial along the interstate system and lying within the boundaries of any incorporated municipality as such boundaries existed on September 21, 1959, and devices located in any other area which, as of September 21, 1959, was clearly established by law as industrial or commercial.

    (vi) Outdoor advertising devices in zoned or unzoned commercial or industrial areas along the primary system.

Section 4 of the Act, 36 P.S. § 2718.104(1)(v) and (vi).

5. Several definitions in the Act are pertinent to this discussion:

    (9) "Unzoned commercial or industrial area" shall mean an area which is *not zoned by State or local law, regulation or ordinance, and on which there is located one or more commercial or industrial activities* and the area along the highway extending outward eight hundred feet from and beyond the edge of such activity.

    . . . .

    (11) "Zoned commercial or industrial area" shall mean an area which is *reserved for business, industry, commerce, trade or other business* of any type or category *pursuant to a State, or local zoning law, ordinance or regulation.*

    (12) "Commercial or industrial activities" shall mean those activities generally recognized as commercial or industrial by zoning law in the Commonwealth, except that none of the following activities shall be considered commercial or industrial:

    (i) Outdoor advertising signs. . . .

Section 3 of the Act, 36 P.S. § 2718.103.

zoning law had been met. We did not address the Act presently at issue.

Thus, we must determine what effect the grant of a variance from the local zoning and sign ordinances has on an application for an outdoor advertising device permit made pursuant to the Act.

■ Weichert's argument assumes that a variance has the same effect as a rezoning classifying the property as commercial or industrial. If this were the case, the property would meet the locational requirements of the Act. However, although a variance is a departure from the strict requirements of the zoning ordinance, grant of a variance does not change the underlying classification of the property. *Levin v. St. Peter's School,* 134 Pa.Commonwealth Ct. 342, 578 A.2d 1349 (1990).

■ Because grant of a variance is not the same as a rezoning, the property is still residentially zoned. It is not zoned commercial or industrial.[6] Thus, Weichert's property fails to meet the basic requirement for location of a sign visible from the highway. A thorough review of the Act reveals no provision for variance or exception from this locational prohibition.

■ Thus, a building permit issued by the municipality pursuant to a variance from the provisions of local ordinances would permit a sign which the state statute prohibits. Although we have found no pertinent Pennsylvania cases dealing with conflict between state and local sign requirements, we find the case law of other jurisdictions instructive in aiding our determination of whether a variance from local zoning requirements supersedes the restrictions of state outdoor advertising control legislation enacted pursuant to the Federal Highway

6. Even were a variance to be considered to have the same effect as a rezoning, permitting a sign under these circumstances would violate the Act because, under the terms of the Act, outdoor advertising signs are not commercial or industrial activities. Section 3 of the Act, 36 P.S. § 2718.103(12). *See also, L & W Outdoor Advertising Company v. State of Indiana,* 539 N.E.2d 497 (Ind.Ct.App.1989), and cases discussed therein.

Beautification Act of 1965, 23 U.S.C. § 131. Review of these cases reveals that where the state requirements for outdoor advertising signs are more restrictive than local regulations, the more restrictive state requirements control. *State ex rel. Missouri Highway and Transportation Commission v. Alexian Brothers of St. Louis, Inc.*, 848 S.W.2d 472 (Mo.1993); *National Advertising Company v. The Department of Highways of the State of Colorado,* 751 P.2d 632 (Colo.1988). In *Alexian Brothers,* the highway commission, pursuant to legislation comparable to our Act, sought removal of signs in a residential area which had been erected pursuant to a variance granted by the City of St. Louis. The court determined that the state law prohibiting erection of a sign superseded a variance granted in accordance with local law. In reaching this determination, the court stated: "To allow Alexian Brothers' sign to stand would be to allow a municipality to permit what state law expressly forbids. 'As a matter of sovereignty the [city] ... may not permit that which the state forbids.' *Superior Outdoor Advertising Co., [v. State Highway Commission of Mo.]* 641 S.W.2d 480 [Mo.App.1982]" *Alexian Brothers',* 848 S.W.2d at 475. In *National Advertising Co.,* a Colorado court was faced with the question of whether the prior issuance of a building permit for an advertising sign by a home-rule municipality prevented the state Department of Highways from denying a permit for an outdoor advertising sign pursuant to a state statute comparable to ours. The court determined that control of outdoor advertising signs is a matter of mixed statewide and local concern and that, where a conflict exists, "the permit requirements of the [state statutes] clearly supersede any conflicting provisions of the [municipal] sign code" so that the grant of a building permit by the municipality could not estop the Department of Highways from enforcing Colorado's Outdoor Advertising Act. The court reasoned:

The Outdoor Advertising Act, in our view, contemplates equally restrictive or more restrictive local controls in keeping with the statutory goals and state interests sought to be achieved by the act.

. . . .

[O]ne of the primary purposes of the act was to make certain that Colorado receives its full share of federal-aid highway funds. . . . In light of Colorado's significant interest in maintaining its eligibility for federal-aid highway funds, we construe [the act] as a clear authorization to a municipality to establish 'local controls' for outdoor advertising devices along the state highway system which are no less restrictive than the controls set forth in the Outdoor Advertising Act or the Roadside Advertising Regulations promulgated by the department. . . . It would be nothing short of a quantum leap to read into the statutory terminology . . . implicit authorization to a home-rule municipality to adopt less restrictive controls than those authorized by the statutory scheme, especially in light of the fact that such less restrictive controls could result in Colorado's disqualification for federal-aid highway funds. Nothing in the statutory scheme or the statutory language itself supports such an interpretation.

*National Advertising Co.*, 751 P.2d at 637–38.

We agree with this reasoning[7] and determine that, in case of conflict, state law controls over less restrictive local regulations. Thus, a local municipality's issuance of a building permit for an outdoor advertising sign pursuant to a variance from the local zoning code does not prevent DOT from denying a permit for the same sign if it fails to meet the requirements of the Outdoor Advertising Control Act.[8] To determine

7. The reasoning applies with even greater force to non-home-rule communities.

8. The issue of whether, in this case, such a conclusion might result in a taking of property without just compensation was not argued and is not before us. We note, however, that this property remnant was created when the rest of the property was acquired for the Schuylkill Expressway thirty years before Colton acquired the property in 1982, and that the Outdoor Advertising Control Act had restricted advertising devices along Pennsylvania's interstate highways for over a decade before Colton acquired the property. Furthermore, a frame garage used for automobile storage is apparently located on the property. (R.R. at 62a.) For these reasons, we would question whether the purchasers had reasonable investment-backed expectations that the property could be used for an outdoor advertising sign visible from the Expressway

otherwise would jeopardize Pennsylvania's ability to receive its full share of federal highway funds.

Accordingly, we affirm.

## ORDER

AND NOW, this 20th day of September, 1993, the order of the Secretary of Transportation, dated October 15, 1992, is affirmed.

and whether all productive use of the property is frustrated. *See, e.g., Mock v. Department of Environmental Resources,* 154 Pa.Commonwealth Ct. 380, 623 A.2d 940 (1993); *Lucas v. South Carolina Coastal Council,* —— U.S. ——, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); *Penn Central Transportation Co. v. New York City,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978).