## PHILADELPHIA OUTDOOR ADVERTISING, Petitioner,

v.

## DEPARTMENT OF TRANSPORTATION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Oct. 8, 1996.

Decided Feb. 28, 1997.

---

Arnold E. Cohen, Philadelphia, for petitioner.

Thomas R. Haist, Assistant Counsel, Harrisburg, for respondent.

Before McGINLEY and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

MIRARCHI, Jr., Senior Judge.

Philadelphia Outdoor Advertising (Philadelphia Outdoor) appeals from a final order of the Secretary of Transportation (Secretary) denying its applications for outdoor advertising device permits pursuant to the Out-

door Advertising Control Act of 1971 (Act), Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. §§ 2718.101–2718.115.

On June 17, 1993, Philadelphia Outdoor filed with the Department of Transportation (Department) applications for outdoor advertising device permits, proposing to erect two advertising signs at 12 and 14 Balligomingo Road, Borough of West Conshohocken (Borough), Montgomery County, along I–476 known as the "Blue Route."

I–476 is an interstate highway subject to control of outdoor advertising under the Act. Under Section 4 of the Act, 36 P.S. § 2718.104, outdoor advertising devices are prohibited "within six hundred sixty feet of the nearest edge of the right-of-way if any part of the advertising or informative contents is visible from the main-traveled way of an interstate ... highway," unless they are, *inter alia*, located in a "Cotton Area" or a "Kerr Area."[1] "Cotton Areas" are "zoned or unzoned commercial or industrial areas along those portions of the interstate system constructed on right-of-way, any part of the width of which was acquired on or before July 1, 1956." 36 P.S. § 2718.104(iv). "Kerr Areas" are "areas zoned commercial or industrial along the interstate system and lying within the boundaries of any incorporated municipality as such boundaries existed on September 21, 1959, ...." 36 P.S. § 2718.104(v).

In Item E.4 of the application forms, the Department described a "Cotton Area" and a "Kerr Area" and explained that an off-premise advertising sign along the interstate system is permitted only in a Cotton or Kerr Area. The Department then asked if the proposed signs were to be located in either Area. Philadelphia Outdoor checked off "No" boxes in answering those questions. Philadelphia Outdoor also did not check off a box for either a Cotton Area or a Kerr Area to indicate the class of the signs and appropriate fees (Item H). Finally, Philadelphia Outdoor indicated that the proposed signs did not conform to a local sign ordinance or regulations, and that it had neither applied for nor obtained a required local permit. (Item F). At the request of the Department, Philadelphia Outdoor subsequently submitted a site plan and drawings containing more detailed locations of the proposed signs.

On August 20, 1993, the Department denied the applications on the grounds that the proposed signs were not located in a Cotton or Kerr Area, and that the signs did not conform to the sign regulations of the Borough.[2] Philadelphia Outdoor appealed the Department's denial and requested an administrative hearing.

Subsequently on October 25, 1993, the Department issued a supplemental denial notice, stating that 74 Pa.C.S. § 8301, enacted on July 2, 1993 to be effective in sixty days, designates I–476 as a scenic byway and prohibits off-premise outdoor advertising devices along its route.

At the hearing held on June 22, 1995, Philadelphia Outdoor presented testimony of Joseph A. Felici, vice president of the engineering firm hired to prepare the applications and supporting documents. Felici testified that the signs would be located in a Kerr Area. Douglas W. Lehr, the Department's right-of-way administrator, testified that the Department could not determine whether the signs would be located in a Kerr Area from the information provided by Philadelphia Outdoor.

After the hearing, Philadelphia Outdoor filed a petition to reopen the record seeking to present an excerpt from Insurance Maps of West Conshohocken, prepared by the Sanborn Map Company of New York; copyright 1928, to establish that the signs would be located within the Borough's boundaries as existed as of September 21, 1959.

---

1. The Act was enacted to protect the Commonwealth's interest in receiving federal funds, and, at the same time, to further the national policy of highway beautification under the federal Highway Beautification Act, 23 U.S.C. § 131, by limiting the proliferation of advertising signs along the highways. Section 2 of the Act, 36 P.S. § 2718.102; *Patrick Media Group, Inc. v. Department of Transportation*, 533 Pa. 188, 620 A.2d 1125 (1993).

2. The Department also stated that Philadelphia Outdoor failed to provide sufficient detailed information as to the locations of the signs. At the hearing, the Department withdrew the lack of such information as one of bases for the denial.

■ In the proposed report, the hearing officer refused to open the record and denied the applications for permit. The hearing officer concluded that the Department properly denied the applications based on the information provided in the applications; the Department had no obligation to further investigate to determine whether the signs complied with the Act; and the facts discovered after the Department's denial were irrelevant in reviewing the Department's denial. The Secretary subsequently denied Philadelphia Outdoor's exceptions and made the denial of the applications final. Philadelphia Outdoor's appeal to this Court followed.[3]

Philadelphia Outdoor first contends that under the applicable regulations, the Department is not authorized to ask an applicant in the application form if the signs are to be located in a Cotton or Kerr Area.[4]

■ The Department promulgated the regulations governing outdoor advertising devices pursuant to Section 6 of the Act, 36 P.S. § 2718.106. The information as to whether the proposed sign would be located in a Cotton or Kerr Area is not listed in 67 Pa.Code § 445.6(b)(2) as one of the items to be included in the application form. However, specific rules applicable to signs to be located in a Cotton and a Kerr Area are set forth in other provisions of the regulations. For example, the signs located in zoned or unzoned commercial or industrial areas, including a Cotton Area and a Kerr Area, are subject to the size, spacing and lighting regulations. 67 Pa.Code § 445.4. Further, an annual permit is "required for signs in zoned or unzoned commercial or industrial areas." 67 Pa.Code § 445.6(a)(2). Consequently, it was reasonable for the Department to ask in the application form if the signs would be in a Cotton or Kerr Area. Without such information, the Department would be unable to determine whether the proposed signs are permitted under Section 4 of the Act and whether the signs comply with the standards set forth in the regulations.

Philadelphia Outdoor next contends that its applications were substantially complete and accurate and contained sufficient information to enable the Department to determine that the signs would be located in a Kerr area, and that the defects in the applications were cured by the evidence presented at the hearing.[5]

■ In the applications, Philadelphia Outdoor indicated that the signs would be in the Heavy Industrial zoning district of the Borough. However, to establish that the signs fall within the Kerr Area exception, Philadelphia Outdoor had to demonstrate, pursuant to Section 4(v) of the Act, not only that the areas where the signs were to be erected were zoned commercial or industrial, but also that those areas were within the boundaries of the Borough as existed on September 21, 1959.

The hearing officer found that Philadelphia Outdoor "attached three maps of West Conshohocken to its applications, one of which is undated, one dated June 1977 and the other ... difficult to decipher dates but showing I–476 which was opened December 19, 1991." Findings of Fact No. 20. Philadelphia Out-

---

3. This Court's scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, or whether any necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Zima Roofing, Inc. v. Pennsylvania Department of Transportation*, 672 A.2d 422 (Pa. Cmwlth.1996).

4. Philadelphia Outdoor also contends that the Secretary improperly denied its motion to strike the Department's reply brief filed to oppose the exceptions. Under 67 Pa.Code § 491.12(b), a party "may file a reply to the exceptions ... within 10 days of the filing date of exceptions filed by another party...." Philadelphia Out-

door filed the exceptions on December 19, 1995, and the Department filed the reply brief on January 5, 1996. Under 1 Pa.Code § 35.193, however, the agency head may accept untimely filed briefs. Because the Secretary in this matter decided to accept and consider the untimely filed reply brief in exercising his discretion, we will not disturb that decision.

5. Philadelphia Outdoor was warned in the applications that the issuance of a permit is "based upon the information and statements made by Applicant," and that "substantially incomplete or inaccurate information shall be grounds for denial of permit." Item G.4 and 7 of the Applications.

door concedes that the maps submitted to the Department only showed the boundaries of the Borough existed as of 1971. Based on such information, the Department could not have determined whether the same boundaries existed on September 21, 1959.

Philadelphia Outdoor admittedly indicated that the proposed signs would not be located in a Cotton or Kerr Area, and the Department could not determine otherwise from the information provided in the applications. Under such circumstances, the Department was under no obligation to further investigate Philadelphia Outdoor's entitlement to permits. The defects in the applications were substantial and directly related to the very issue of whether the proposed signs are permitted under the Act. *See Wiley House v. Scanlon,* 502 Pa. 228, 465 A.2d 995 (1983) (only where an applicant substantially satisfies all necessary conditions, except a condition which is trivial or relatively unimportant in the regulatory scheme, the agency's failure to approve the application may be subject to challenge on due process grounds).

Further, the evidence presented at the hearing failed to establish that the locations of the signs were within the boundaries of the Borough as existed on September 21, 1959. Philadelphia Outdoor's witness, Joseph A. Felici, only stated, without presenting any supporting documents, that the signs would be located in the Kerr area. Philadelphia Outdoor also presented the letters sent by Felici to the Department after the denial of the applications. However, in the letters he merely reiterated that the areas were zoned Heavy Industrial.

Philadelphia Outdoor further contends that the hearing officer should have granted the petition to reopen the record and permitted it to present the excerpt of the issuance maps, which allegedly showed the boundaries of the Borough as existed as of September 21, 1959.

A decision to grant or deny a petition to reopen the record in an administrative proceeding is within the discretion of the presiding officer; therefore, it may not be reversed on appeal absent a clear abuse of discretion. *Al Hamilton Contracting Co. v. Department of Environmental Resources,* 659 A.2d 31 (Pa.Cmwlth.1995). In seeking to reopen the record, Philadelphia Outdoor did not allege that the offered evidence was unavailable at the time of the hearing despite its due diligence, or that there was other compelling reason for opening the record, such as a change of circumstances. *See Metro Transportation Co. v. Pennsylvania Public Utility Commission,* 128 Pa.Cmwlth. 223, 563 A.2d 228 (1989). Therefore, the hearing officer did not abuse his discretion in refusing to reopen the record.

Finally, we also reject Philadelphia Outdoor's challenge to the Department's denial of the applications based on its failure to comply with the sign regulations of the Borough.[6]

Section 13 of the Act provides that "[n]othing in this act shall be construed to abrogate or affect the provisions of any lawful ordinance, regulation, or resolution which are more restrictive than the provisions of this act." The Act thus contemplates equally or more restrictive local controls of the outdoor advertising devices in keeping with the statutory goals and the state's interests sought to be achieved. *Weichert AD & P, Inc. v. Department of Transportation,* 158 Pa.Cmwlth. 476, 631 A.2d 1106 (1993), *appeal denied,* 540 Pa. 609, 655 A.2d 996 (1995). Because the Act contemplates more restrictive local regulations over outdoor advertising signs, and because without a local permit Philadelphia Outdoor cannot erect and maintain the signs even with the Department's approval of the applications, the Department's inquiry into the existence of and the compliance with such local regulations was reasonable.

Accordingly, the order of the Secretary is affirmed.

---

**6.** On June 15, 1993, the Borough's zoning officer denied Philadelphia Outdoor's applications for sign and building permits. On December 6, 1993, the Borough Zoning Hearing Board denied Philadelphia Outdoor's request for a variance and challenge to the validity of the zoning ordinance and affirmed the zoning officer's decision. The Board's decision was subsequently affirmed by the trial court.

## ORDER

AND NOW, this 28th day of February, 1997, the order of the Secretary of Transportation in the above-captioned matter is affirmed.