IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Delaney, Martin Delaney,            :
William Delaney and James Delaney,       :
                                         :
                       Appellants        :
                                         :
             v.                          : No. 520 C.D. 2018
                                         : Submitted: March 12, 2019
Montgomery County Tax Claim Bureau       :
and JWW2, LLC and James Watters          :


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  August 27, 2019


            Brothers John Delaney, Martin Delaney, William Delaney, and
James Delaney (collectively, Appellants) appeal from the April 5, 2018 order of
the Court of Common Pleas of Montgomery County (trial court) denying their
Petition to Set Aside Tax Sale.  For the following reasons, we reverse.

            Appellants jointly owned two adjacent parcels[1] at 343-351 High
Street, Pottstown, Pennsylvania (the property) that were sold by the Montgomery
County Tax Claim Bureau (Bureau) to JWW2, LLC, at a September 22, 2016 upset
sale.  In November 2016, Appellants filed a petition to set aside the tax sale,
alleging that the Bureau failed to comply with the notice requirements of Section

---

[1] The parcel ID numbers are 16-00-15488-00-3 and 16-00-15484-00-7.

602 of the Real Estate Tax Sale Law (Tax Sale Law),[2] and failed to undertake the additional efforts required by Section 607.1 of the Tax Sale Law.[3]

The trial court held a hearing on September 18, 2017.[4] Bridget Lafferty, Second Deputy Treasurer for Montgomery County, testified that she oversees the Bureau and the preparation of tax upset sales. Lafferty stated that the Bureau customarily relies on the records of the Montgomery County Board of Assessment, which in this case listed the mailing address for each Appellant as 1250 Bethlehem Pike, Suite 389, Hatfield, Pennsylvania.

---

[2] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §5860.602.

[3] Section 607.1 of the Tax Sale Law was added by the Act of July 3, 1986, P.L. 351, 72 P.S. §5860.607a.

[4] This Court has explained:

> It is the taxing authority's burden to prove compliance with the statutory notice provisions. *Casanta v. Clearfield County Tax Claim Bureau*, [435 A.2d 681, 683 (Pa. Cmwlth. 1981)]. In *Hughes v. Chaplin*, [132 A.2d 200, 202 (Pa. 1957)], our Supreme Court established that a *prima facie* presumption of regularity in a tax sale exists until the contrary is shown. In *Dolphin Service Corp. v. Montgomery County Tax Claim Bureau*, [557 A.2d 38 (Pa. Cmwlth. 1989)], this Court, harmonizing *Casanta* with *Hughes*, held that the filing of exceptions overcomes the presumption of regularity in the tax sale; accordingly, the filing of exceptions requires a bureau to prove that it has complied with the statutory notice requirements. Strict compliance with those requirements is required in order to ensure due process, and the burden to show strict compliance lies exclusively with the tax claim bureau. *Michener v. Montgomery County Tax Claim Bureau*, 671 A.2d 285, 289 (Pa. Cmwlth. 1996).

*In re Tax Sale of Real Property Situate in Paint Township*, 865 A.2d 1009, 1015 (Pa. Cmwlth. 2005).

2

Lafferty stated that notices of the upset sale were sent to Appellants, individually, by certified mail, restricted delivery. She said that the notices sent to Martin, James, and William Delaney were returned as "refused," but the notice sent to John Delaney was signed. Reproduced Record (R.R.) at 162a-63a, 180a. She acknowledged that the returned envelopes did not reflect that they were mailed "restricted delivery."

Lafferty said the Bureau initiated additional notification efforts by searching a database produced by LexisNexis Accurint (Accurint). She believed that Accurint gets its information from publicly available records such as deeds, court records, and utilities. R.R. at 164a-65a. She identified the address found for each Appellant in the Accurint database, as set forth on a Bureau form titled "Section 607a Additional Notification Efforts." That form provides a list of records to be searched, including "Deed and Mortgage Records in the Office of the Recorder of Deeds," and "Records in the Office of the Prothonotary," as well as space for recording the results of each records search. R.R. at 311a. Lafferty testified that the Bureau did not check the Recorder of Deeds or Prothonotary websites, or any telephone directories, prior to the tax sale. She acknowledged that the Accurint report states it should not be relied upon as definitively accurate, but should be independently verified, and that the Bureau did not check any other sources. R.R. at 191a.

Lafferty said the Bureau again provided Appellants notice of the tax sale in a "ten-day letter," sent by first class mail, using a mail house, Midwest Direct (Midwest). The Bureau offered into evidence: an affidavit from Jeremy Heroux at Midwest confirming that Midwest mailed 1,236 ten-day letters via first class mail through the United States Postal Service (USPS) on September 8, 2016;

3

a USPS postage statement reflecting the number of pieces mailed and costs; a blank Notice of Public Sale form; and a list of properties, owners and mailing addresses. R.R. at 318a-23a. Lafferty testified that the Bureau reimbursed Midwest $494.45 in postage charges.

Additionally, Lafferty stated that advertisements were published in the county law reporter and two newspapers, the Norristown Times Herald and the Pottstown Mercury. The Bureau submitted a copy of the advertisement that ran in the law reporter on August 18, 2016, and Affidavits of Publication reflecting that advertisements were published in the newspapers. Exhibit F, R.R. at 328a-29a, 331a-32a. Notably, a copy of the newspaper ads was not submitted, and the affidavits contained no information concerning the content of the ads.

Chief Adam Berry testified that he posted the property on August 30, 2016, when he was a sergeant in the sheriff's department. He identified two affidavits of posting containing his signature. He said he had no independent recollection of posting the properties, but he stated that he posts properties the same way every single time. He was not asked to elaborate. R.R. at 203a-204a, 207a-208a.

Martin Delaney testified that Appellants purchased the property in 2013 as an investment. He stated that his brother John chose to use the address of a UPS store, at 1250 Bethlehem Pike, Unit 389, Hatfield, Pennsylvania, for correspondence related to the property because John frequently traveled between Hatfield and Ireland.

Martin said that he owns a house at 101 West Thatcher Road in Quakertown, Pennsylvania. He testified that he has lived there for three years and has been receiving his mail at that address. He added that his brothers William and

4

James also have lived in Quakertown for about three years. Martin identified a docket report from the Prothonotary's Office of Montgomery County, which reflected his home address as 101 West Thatcher Road in Quakertown.

Martin said he changed his mailing address with Pottstown Borough two years ago and has been paying his school taxes; he said he incorrectly believed that filing a change of address with the local township was sufficient. Martin also testified that he visited the property on several occasions between August 30, 2016, and September 22, 2016, and did not see any posted notice that a tax sale was scheduled to take place.

William Delaney and James Delaney similarly testified that they had been living in Quakertown, they had never received mail at the UPS store, they did not receive any notices of the tax sale from the Bureau, and they first learned of the tax sale after it occurred.

Appellants offered into evidence the envelopes containing the ten-day notices, which clearly indicate they were sent "restricted delivery," to support their argument that the original notices, which contained no such indication, were not sent restricted delivery.

James Watters, manager of JWW2, LLC, testified that he attended the tax sale and was the successful bidder. He stated that he visited the property prior to the sale and observed a notice of the sale posted. He said that he peeled the notice "off a post" after the sale, and he submitted the actual notice at the hearing. R.R. at 247a. Watters testified that he went inside and found numerous pieces of mail addressed to all Appellants on a table. Among the pieces of mail was an envelope addressed to John Delaney from "P.O. Box 351, Norristown, PA."

5

R.R. at 260a. Finally, Watters testified that he had incurred approximately $9800.00 in expenses post-petition.

After the hearing, Appellants filed a post-hearing brief, R.R. at 75a-88a, arguing that the tax sale was invalid. First, they contended that the Bureau failed to present evidence that the 30-day notices were sent certified mail, restricted delivery. Next, Appellants argued that if the Bureau had searched the Prothonotary and Recorder of Deeds records, as required by Section 607.1(a) of the Tax Sale Law, it would have found the Quakertown mailing address. Appellants also asserted that, absent testimony from a Midwest employee, signature of a USPS employee, and/or copies of envelopes, the Bureau failed to provide proof of mailing of the ten-day notices. Finally, Appellants argued that the Bureau failed to prove compliance with the statutory publication requirement because it failed to prove that the newspaper advertisement contained the information required by Section 602(a) of the Tax Sale Law.

On October 17, 2017, the Bureau filed a motion to reopen the record in order to present additional evidence. R.R. at 91a-93a. The Bureau asserted, "There is further evidence that should be reviewed, particularly with regard to the certified mailings, that would lead to a more accurate adjudication of this matter and would clarify the previously provided testimony." R.R. at 92a. Appellants responded that the Bureau should not be allowed a second bite at the apple and the opportunity to tailor its case to the arguments made in Appellants' post-hearing brief. R.R. at 99a. The trial court granted the Bureau's motion by order dated November 17, 2017.

At the second hearing, Lafferty testified that she went to the post office on September 29, 2017, and was told that the 30-day notices had been sent

6

certified mail, restricted delivery. Appellants objected to this testimony as hearsay, but the trial court overruled the objection. Lafferty submitted USPS documents supporting her testimony.

The trial court credited the testimony of the Bureau's witnesses and held that the Bureau's evidence was sufficient to demonstrate compliance with the notice requirements of the Tax Sale Law. Accordingly, the trial court denied Appellants' petition to set aside the tax sale, and Appellants now appeal to this Court.[5]

We first address Appellants' contention that the trial court erred in granting the Bureau's motion to reopen the record and allowing the Bureau to introduce evidence that the 30-day notices were sent "restricted delivery." Appellants assert that the Bureau had or should have had the additional evidence in its possession at the time of the first hearing.

> The general rule is that a court may, in its discretion, reopen the case after a party has closed for the taking of additional testimony, *but such matters are peculiarly within the sound discretion of the trial court*. Particularly, a case may be reopened where it is desirable that further testimony be taken in the interest of a more accurate adjudication and where an honest purpose would be justly served without unfair disadvantage.

*Bretz v. Central Bucks School District*, 86 A.3d 306, 314-15 (Pa. Cmwlth. 2014) (emphasis added) (quotations and citations omitted). *Bretz* involved a landowner's request for damages and injunctive relief in connection with a school district's

---

[5] Our scope of review of an order denying a petition to set aside a tax sale is limited to determining whether the trial court abused its discretion, erred as a matter of law or rendered a decision with a lack of supporting evidence. *McElvenny v. Bucks County Tax Claim Bureau*, 804 A.2d 719, 721 (Pa. Cmwlth. 2002).

7

ongoing construction projects. Appellants note that reopening the record was appropriate in *Bretz*, where the trial court took relevant testimony concerning the "current state of facts," 86 A.3d at 315. However, Appellants contend that this case is more akin to *Philadelphia Outdoor Advertising v. Department of Transportation*, 690 A.2d 789 (Pa. Cmwlth. 1997), *Metro Transportation Co. v. Pennsylvania Public Utility Commission*, 563 A.2d 228 (Pa. Cmwlth. 1989), and *In re Singer* (Pa. Cmwlth., No. 514 C.D. 2015, filed April 23, 2015).[6] In those cases, the party seeking to reopen the record did not have any new evidence and this Court held that the *denial* of a motion to reopen the record was not an abuse of discretion. Appellants have not cited a case in which allowing the reopening of the record was held to be an abuse of the trial court's discretion.

An abuse of discretion is more than just an error in judgment. *Belleville v. David Cutler Group*, 118 A.3d 1184, 1195 (Pa. Cmwlth. 2015). On appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. *Id.* Applying these standards, we conclude that Appellants have not established that the trial court abused its discretion in reopening the record.

Appellants also argue that the trial court erred in holding that the Bureau complied with each of the notice requirements of Section 602 of the Tax Sale Law.[7] It is well settled that the statutory notice provisions in the Tax Sale

---

[6] See Section 414(a) of this Court's Internal Operating Procedures, 210 Pa Code §69.414(a) ("Parties may . . . cite an unreported panel decision of this court issued after January 15, 2008, for its persuasive value, but not as binding precedent.").

[7] In relevant part, Section 602 of the Tax Sale Law states:

**(Footnote continued on next page…)**

8

Law "must be strictly construed lest a person be deprived of property without due process." *Maya v. County of Erie Tax Claim Bureau*, 59 A.3d 50, 55 (Pa. Cmwlth. 2013). The tax claim bureau has the burden of proving its compliance with the notice provisions. *Id.*

**(continued…)**

> (a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.
>
> *   *   *
>
> (e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:
>
> (1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.
>
> (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.
>
> (3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

72 P.S. §5860.602(a), (e).

Appellants first argue that the Bureau failed to demonstrate compliance with the specific requirement of Section 602(e)(1) of the Tax Sale Law that the notice be sent certified mail, *restricted delivery*. Appellants note that copies of the returned envelopes sent to Martin, William, and James are not marked "restricted delivery," whereas the envelopes sent with post-sale notices contain such an indication. R.R. at 305a-309a, 352a-53a. However, Lafferty testified that she received confirmation from the USPS that the three returned envelopes for each parcel had been sent restricted delivery. Specifically, she stated that a clerk scanned the envelopes and printed out receipts reflecting that each had been sent restricted delivery, R.R. at 358a, and she testified that the Bureau had paid the charges indicated for that service. The Bureau also submitted Exhibits K, L, and M, which included 12 pages of USPS tracking information, receipts, and emails.[8] The trial court relied on this evidence to determine that the 30-day notices were properly mailed, and we agree that this evidence was sufficient to prove compliance with Section 602(e)(1).

Appellants next assert that the Bureau did not present sufficient evidence to demonstrate compliance with Section 602(e)(2) of the Tax Sale Law, requiring that if a return receipt is not returned from each owner under Section 602(e)(1), the Bureau must send a notice to each owner at least ten days before the date of the tax sale, "by United States first class mail, *proof of mailing*, at his last known post office address . . . ." 72 P.S. §5860.602(e)(2) (emphasis added). Appellants argue that in *Horton v. Washington County Tax Claim Bureau*, 81 A.3d

---

[8] Lafferty also testified that the emails in Exhibit L contain correspondence beginning July 20, 2016, R.R. at 399a, between Bureau first deputy William Caldwell and Julie Geary of Print Mail Solutions, concerning a request and specific instructions for mailing notices of the tax sale. R.R. at 365a-67a.

883 (Pa. 2013), our Supreme Court held that the phrase "proof of mailing" could be satisfied with *either* a USPS certificate of mailing *or* the actual envelopes that were sent to the property owners by first class mail and returned as undeliverable per a USPS notation.

In *Horton*, the tax claim bureau proffered a USPS Consolidated Postage Statement, signed by a USPS employee, bearing a USPS stamp, and showing a mail date for a total of 2,913 pieces. An attachment to the document contained a list of persons to whom second (ten-day) notices were sent. "Second, and more importantly, the [bureau] proffered the actual envelopes sent via first class mail" to the property owners and returned to the bureau with a USPS notation "Return to Sender, Not Deliverable as Addressed, Unable to Forward." 81 A.3d at 891. Emphasizing that the actual envelopes mailed were submitted at the hearing, the Supreme Court held that documents other than a USPS Form 3817, Certificate of Mailing, could serve as evidence to establish "proof of mailing" for purposes of Section 602(e)(2) of the Tax Sale Law. Appellants misconstrue *Horton* as holding that the returned envelopes *are required* where a USPS certificate of mailing is not presented as proof of mailing.

Subsequently, in *Consolidated Reports and Return by the Tax Claim Bureau of Northumberland County*, 132 A.3d 637, 647 (Pa. Cmwlth. 2016) (*Appeal of Neff*), we applied the holding in *Horton* and reviewed the evidence presented as follows:

> Unlike the documentation in *Horton*, the evidence proffered by the Bureau here *neither includes USPS official documents, signed or unsigned by a USPS employee,* nor does the evidence include the actual envelopes sent to Objector. The document proffered by the Bureau is a fifty-seven page list of all the names and addresses of property owners to which the Bureau

11

ostensibly sent notice by first-class mail on September 4, 2013. (Proof of Mailing, Bureau's Ex. F, R.R. at 144a-45a.) Attached to the bottom of each page is a label printed from the Bureau's postage meter showing the amount of postage paid for mailing the notice to the addresses listed on each page. (Proof of Mailing, Bureau's Ex. F, R.R. at 144a-45a; Hr'g Tr. at 29, R.R. at 56a.) Next to the label is a postage stamp, allegedly emplaced by the USPS, listing a September 4, 2013 mail date. (Proof of Mailing, Bureau's Ex. F, R.R. at 144a-45a.) This stamp is the only proof of mailing in any way connected to the USPS and no other USPS document was proffered. (Hr'g Tr. at 29-30, R.R. at 56a-57a.) Because the Bureau did not proffer **any documents from the USPS**, we conclude that the evidence here falls short of the standard set forth in *Horton* and the Bureau did not strictly comply with the notice requirement of Section 602(e)(2) of the Law.

132 A.3d at 647 (italics added, bold emphasis in original). Appellants assert that the Bureau's evidence likewise falls short of the standard enunciated in *Horton*, because the Bureau failed to introduce the actual envelopes mailed to Appellants, no witness from Midwest Direct testified, and the USPS documents were not signed or stamped by a postal employee.

We conclude that the Bureau's evidence is distinguishable from the proof of mailing offered in both *Horton* and *Appeal of Neff*. In contrast to the complete lack of documentation in *Appeal of Neff*, the Bureau submitted an affidavit signed by Jeremy Heroux, stating that Midwest Direct acted as the Bureau's mailing agent and mailed 1,236 ten-day letters via first class mail through the USPS on September 8, 2016. Lafferty testified that the Bureau reimbursed Midwest Direct for the cost of the mailing. R.R. at 169a. The Bureau also submitted USPS receipts, albeit unsigned and unstamped; a blank Notice of Public Sale; and a list of parcels with corresponding names and addresses, including Appellants'. Exhibit D, R.R. at 318a-23a. We conclude that the Bureau's

12

evidence is sufficient in its totality to satisfy the proof of mailing requirement of Section 602(e)(2).

Appellants further argue that the Bureau did not prove compliance with the posting requirement of Section 602(e)(3) because it offered no evidence concerning the place or manner in which the notice was posted. "While the [Tax Sale Law] is silent as to the manner of posting required, this Court has interpreted Section 602(e)(3) to mean that the method of posting must be reasonable and likely to inform the taxpayer and the public at large of an intended real property sale." *Wiles v. Washington County Tax Claim Bureau*, 972 A.2d 24, 28 (Pa. Cmwlth. 2009).

Watters testified that he found the actual notice on the building, but he did not say where it was posted. Additionally, he offered no testimony concerning the posting of the adjacent vacant parcel. Similarly, Chief Berry offered no testimony concerning the manner of posting. However, Chief Berry verified his signatures on the affidavits of posting, and we have repeatedly held that an affidavit of posting "is competent evidence that the premises were properly posted." *Barylak v. Montgomery County Tax Claim Bureau*, 74 A.3d 414, 416 (Pa. Cmwlth. 2013) (citing *In Re Sale of Real Estate by Lackawanna County Tax Claim Bureau*, 986 A.2d 213, 217 (Pa. Cmwlth. 2009)*; Picknick v. Washington County Tax Claim Bureau*, 936 A.2d 1209, 1213 (Pa. Cmwlth. 2007)).

A party asserting that premises were not properly posted has the burden to offer contradictory evidence. *In re Tax Sale of Real Property Situate in Paint Twp.*, 865 A.2d 1009, 1018 (Pa. Cmwlth. 2005). Martin Delaney testified that he visited the property about once a week between August 30, 2016 and September 22, 2016, and did not see any posted notice. The trial court did not

expressly reject that testimony, but the court expressly credited the contrary testimony of other witnesses. As factfinder, the trial court has exclusive authority to weigh the evidence, make credibility determinations, and draw reasonable inferences from the evidence. *Barylak*, 74 A.3d at 416. In this instance, the trial court properly exercised its authority as factfinder to conclude that the posting requirement was satisfied.

Appellants next argue that the Bureau failed to make the additional notification efforts that are specifically required by Section 607.1 of the Tax Sale Law. In relevant part, it states:

> (a) When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner … and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. *The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office*, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. *When such reasonable efforts have been exhausted*, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. §5860.607a(a) (emphasis added).

14

The Bureau admittedly did not search county telephone directories, or dockets of the county tax assessment offices, recorder of deeds office, or prothonotary's office. In *Rice v. Compro Distributing, Inc.*, 901 A.2d 570, 573 (Pa. Cmwlth. 2006), we described such efforts as "the mandatory minimum search required by Section 607.1 of the [Tax Sale Law]."[9] The trial court erred in determining that the Bureau's use of the Accurint search, alone, was sufficient to satisfy the "reasonable efforts" requirement of Section 607.1(a).

Appellants further assert that the trial court erred in concluding the Bureau satisfied the statutory publication requirement because no evidence was presented to show that the advertisements contained the information required by Section 602(a) (purpose of the sale, time, place, terms and description of property). We agree.

The purpose of the publication requirement is to notify the public in general. *Pacella v. Washington County Tax Claim Bureau*, 10 A.3d 422, 426 n.5, (Pa. Cmwlth. 2010). Lafferty testified that the advertisements ran in the newspapers and legal journal, and the Bureau submitted notarized affidavits of publication of the newspaper advertisements, including a client identification and an advertisement identification. However, the affidavits make no reference to the contents of the advertisements. Thus, the Bureau's documentation regarding publication, R.R. at 326a-32a, demonstrates only that advertisements for Appellants' property were placed in both the county newspapers and legal journal. Appellants cite no authority for the assertion that the Bureau must present a *copy* of the advertisements to prove proper publication. However, absent any evidence

---

[9] The record reflects that a check of the prothonotary's records would have revealed Appellants' 101 West Thatcher Road address. R.R. at 348a-51a.

concerning the content of the newspaper advertisements, the trial court erred in holding that the Bureau established compliance with the publication requirement of Section 602(a) of the Tax Sale Law.[10]

It is well settled that a failure by a tax claim bureau to comply with each and every statutory requirement will nullify a tax sale. *Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1252 (Pa. Cmwlth. 2003). Additionally, we have repeatedly explained that where notice is at issue, the proper focus is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the bureau comply with the requirements of the statute. *Steinbacher v. Northumberland County Tax Claim Bureau*, 996 A.2d 1095, 1099 (Pa. Cmwlth. 2010). Because the Bureau did not prove that it complied with the Tax Sale Law's requirements concerning additional notification efforts or publication, the trial court erred in denying the petition to set aside the tax sale.

Accordingly, we reverse.

_____
MICHAEL H. WOJCIK, Judge


Judge Simpson concurs in the result only.

---

[10] Appellants' final argument is that the trial court erred in permitting Lafferty to testify about the contents of a letter from Jeremy Heroux of Midwest Direct and about her conversation with an employee at the post office. Lafferty testified that she went to the post office, handed the six returned envelopes to an employee, asked for confirmation that the envelopes were sent restricted delivery, and received the USPS documents, including receipts, reflecting that the envelopes were sent restricted delivery. To the extent the trial court erred in not limiting her testimony, we conclude such error was harmless.

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

John Delaney, Martin Delaney,            :
William Delaney and James Delaney,       :
                                         :
                    Appellants           :
                                         :
            v.                           : No. 520 C.D. 2018
                                         :
Montgomery County Tax Claim Bureau       :
and JWW2, LLC and James Watters          :


O R D E R


AND NOW, this 27th day of August, 2019, the order of the Court of Common Pleas of Montgomery County, dated April 5, 2018, is REVERSED.


_____
MICHAEL H. WOJCIK, Judge